## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉,

### THORNTON v. COMMONWEALTH.

#### January 18, 1912.

1. CRIMINAL LAW—*Indictment—Surplusage—How Removed.*—An indictment which fully and sufficiently charges a crime under one statute is not rendered bad by also making a charge under an entirely different statute. The latter may be treated as surplusage. The objection, however, cannot be reached by demurrer, but may be made either by a motion to strike the surplus statement or averment from the indictment, or by a motion to exclude testimony offered in support of the averment, or by an instruction to the jury to disregard the averment and all evidence in support of it.

2. BILLS OF EXCEPTION—*How Authenticated—How Evidence Incorporated.*— It is of the utmost importance, in the administration of justice, that the record upon which the courts are to act should be ascertained with certainty, and so attested as to leave no doubt of its authenticity. Bills of exception in a completed form are required to be authenticated by the signature of the presiding judge, and the record should show such authentication. The signature of the judge to a skeleton bill— a bill not containing the evidence, but referring to unidentified papers as containing it—leaves the bill incomplete, and is not such authentication as the law requires. The stenographer's report of the evidence and other papers intended to be made parts of a bill of exception by reference must be so articulated as to form but one paper, or in some way ear-marked or identified by the judge who signs the bill, and the record must show it. A bill of exception is a record, and, like any other record, cannot be established by parol testimony, but must carry on its face the evidence of its own integrity and completeness.

3. WITNESSES—*Experts—Opinions.*—Upon the trial of the cashier of a bank for having made a false report of the condition of the bank to the State Corporation Commission, the following question propounded to an expert accountant (who had examined the books of the bank) and his answers thereto, should have been excluded: "Taking all of your information up to the present time, including your investigation into these books, have you been able to reach a conclusion that Mr. Thornton made a true statement as to the condition of this bank?" Ans. "No, sir; it was not a true statement." The question and answer take away from the jury the very issue they were to try, and submit it to

the witness, and, upon that evidence alone, if admissible, the prisoner might have been found guilty. While the witness was an expert accountant, his answer is not confined to information derived from the books.

Error to a judgment of the Circuit Court of Charlotte county.

*Reversed.*

The opinion states the case.

*H. D. Flood* and *W. C. Carrington,* for the plaintiff in error.

*Samuel, W. Williams, Attorney-General,* for the Commonwealth.

KEITH, P., delivered the opinion of the court.

F. C. Thornton was indicted in the Circuit Court of Charlotte county for having made to the State Corporation Commission a false statement of the financial condition of the Charlotte Banking and Insurance Company, knowing it to be false, and he being the cashier of that institution. He demurred to this indictment, the demurrer was overruled, he pleaded not guilty, and, upon the trial of that issue, the jury found him guilty, and fixed his imprisonment in the State penitentiary for one year, and assessed a fine against him of seven hundred dollars, and to that judgment he has obtained a writ of error.

The first error assigned is to the judgment of the court overruling the demurrer to the indictment.

The prosecution relied upon sections 1160, 1169, and 1170 of the Code of 1904.

It is conceded, or, if not conceded, there can be no doubt, that the indictment states a case under the last two sections above referred to, the first of which requires that every bank and banking institution chartered under the laws of the State of Virginia and doing a banking business therein shall annually report to the State Corporation Commission its financial condition at such times as the State Corporation Commission may, by its rules, prescribe, identically as the national banks organized under the

93

laws of the United States are required to make their statements to the controller of the currency. The statements are to be made in accordance with forms prescribed by the Corporation Commission, certified under oath by the president or cashier of the bank, and attested by at least three of its directors. It is made the duty of the Corporation Commission to call upon such companies, banks, and banking institutions for the statements mentioned, and at the time prescribed, and to have prepared such forms as may be necessary to carry out the provisions of the law. The Corporation Commission is required, at least once in every year, and at such other times as they may deem necessary, to cause to be examined each and every such bank and banking institution designated as a State depository, all the expense incident thereto to be borne by the bank or institution so examined.

By section 1170 it is provided that any such joint stock company, bank, or banking institution, etc., failing to comply with the provisions of section 1169 for a period longer than thirty days after being called upon by the State Corporation Commission, shall be fined not less than one hundred dollars nor more than one thousand dollars. The Corporation Commission is required to give notice of such default in some newspaper, as provided in the preceding section, and any officer of any such joint stock company, bank, banking institution, etc., who knowingly makes a false statement of the condition of any such bank, shall be deemed guilty of a felony, and, upon conviction, shall be fined not less than one hundred nor more than five thousand dollars, and imprisoned in the penitentiary not less than one nor more than ten years.

In the indictment under consideration there is embraced a charge not only of failure to comply with the sections just cited (1169 and 1170), but there was a charge of failure to comply with section 1160, which is as follows: "The directors shall, once in three months at the least, cause an examination to be made of the moneys of the bank, and a settlement to be made of the accounts of the cashier, a statement of which examination and settlement shall be recorded with the proceedings of the board."

The contention of plaintiff in error is that section 1160 has

no proper place in the indictment; that the offense for which he was tried and punished is fully provided for in sections 1169 and 1170, and that the introduction of section 1160 was and is prejudicial to his rights.

This may be true, but the objection cannot be availed of upon a demurrer to the indictment. That indictment, as we have said, states a sufficient case against the plaintiff in error. Such being the fact, the reference to section 1160 is surplusage, and does not vitiate the indictment. Stephens on Pleading, p. 424.

In Bishop's Criminal Procedure (4th ed.), sec. 478, surplusage is defined to be "any allegation without which the pleading would remain adequate in law." And in section 479 it is said, "An indictment, either on a statute or at the common law, fully setting out the offense, is not rendered ill by the addition of matter aggravating it beyond the law's defining."

While it cannot be reached by demurrer, there are other modes by which it can be done: By a motion to strike out the surplus statement or averment from the indictment; by a motion to exclude testimony sought to be introduced in support of such an averment; or by an instruction to the jury to disregard the averment and all evidence in support of it. Counsel for plaintiff in error recognized that the proceeding by demurrer could not be trusted to afford relief, and sought to accomplish the result by means of an objection to an instruction offered by the Commonwealth; but with that aspect of the case we shall deal later on.

During the progress of the trial twenty-nine bills of exceptions were taken, and we are met at the threshold of the case with the objection upon the part of the Commonwealth that in none of those bills are the papers or documents which are referred to, or the evidence of witnesses, so identified as to constitute a record proper for our consideration.

We regret that this difficulty is one of such frequent occurrence, and we shall not attempt to fix the responsibility for the omission, or further animadvert upon the fact than to say that, while it is a matter of profound regret that such should be the case, we have no choice but to enforce the law as we find it. Those who are not responsible for the administration of justice in accordance with established modes of procedure easily dispose of

such objections by denouncing them as technical, but, while technical, nothing can be of higher importance in the administration of justice than that the record upon which the courts are required to act should be ascertained with certainty, and so attested as to leave no doubt of its authenticity, in order that the law pertaining to it may be safely and intelligently declared, and the rights of individuals and of society duly protected.

All of the bills of exceptions in this case, from the first to the last (except perhaps the fourth and ninth), hang upon bill of exceptions numbered 29, which is what is known as a skeleton bill—that is to say, it is one into which the evidence, whether documentary or the testimony of witnesses, is not copied into the bill itself, which is signed by the judge, but the body of the evidence, documentary and otherwise, appears in separate and distinct papers and in the stenographer's report of the evidence. It is obvious, therefore, that the mere signature of the judge to such a bill leaves it incomplete, and that it becomes necessary to identify the papers referred to, and the evidence of the witnesses contained in the stenographer's report, in such manner as to leave no doubt, when found in the record, that they constitute the papers and stenographer's report referred to in the bill.

In the body of bill of exceptions No. 29 it is said that "the Commonwealth, to maintain the issue joined on its part, introduced the following evidence in chief, which is as follows—to-wit: (Here insert the evidence introduced by the Commonwealth, as shown by the evidence written up by the stenographers and marked 'Stenographer's Report of Evidence, Nos. 1 and 2,' and identified by the signature of the judge of this court); and thereupon the defendant, to maintain his defense on the issue joined, introduced the following evidence, which is as follows—to-wit: (Here insert all the evidence introduced by the defendant, as shown by the said 'Stenographer's Report of Evidence, Nos. 1 and 2,' identified by the signature of the judge of this court); and thereupon the Commonwealth, to further maintain the issue joined on its part, introduced, in rebuttal, the following evidence, which is as follows— to-wit: (Here insert all of the evidence introduced by the Commonwealth in rebuttal, as shown by the said 'Stenographer's Report of Evidence, Nos. 1 and 2,' identified by the signature

of the judge of this court); which said stenographer's reports of the said evidence are filed herewith, and are relied upon, and made a part of this exception; and the foregoing being all of the evidence introduced except the following—to-wit, the certified copies of the charter of the Charlotte Banking and Insurance Co., from the clerk's office of Charlotte and from the office of the Secretary of the Commonwealth," and other papers introduced in evidence.

The trouble is that the signature of the judge of the circuit court, by which the report of evidence and the papers referred to were to be identified, is nowhere to be found in the record, and there is, as a matter of fact, no such identification—indeed, no identifying mark whatever.

These are the facts with reference to bill of exceptions No. 29, and all others, we believe, except Nos. 4 and 9.

No. 4 refers to a statement purporting to be made by the cashier, Thornton, "in the words and figures following—to-wit: (Here insert statement); and also the original statement made by F. C. Thornton to the State Corporation Commission, under date of the 24th day of May, 1909, which original statement is in the words and figures following—to-wit: (Here copy original statement)." The difficulty here is that the papers referred to are not copied into or attached to the bill of exceptions, nor are they identified or ear-marked in any way.

In *Kecoughtan Lodge* v. *Steiner*, 106 Va. 589, 56 S. E. 569, it is said: "Where a bill of exception states that all of the evidence in a case is certified in bill of exception No. 2, and bill No 2 states that the 'evidence, as certified by the court, is, in the words and figures following—to-wit'; and the stenographer's report of the evidence, endorsed by counsel on both sides as a correct copy, and signed by the trial judge, is securely attached to the bill of exception by paper fasteners, the bill of exception and report of the evidence are so articulated as to form but one paper, and sufficiently identifies the evidence referred to in the bill of exceptions."

In *U. S. Mineral Co.* v. *Camden*, 106 Va. 663, 56 S. E. 561, 117 Am. St. Rep. 1028, it was held that "A paper filed in the record, without identification of any kind whatever, which purports to set out the evidence given on the trial, at the end of which is a

certificate of the judge presiding at the trial, 'I hereby certify that the foregoing is all the evidence in this case,' is not a bill of exception, and cannot be made to serve its function. It cannot be used as a basis of review of the action of the trial judge in granting and refusing instructions based on the evidence, or in overruling a motion for a new trial on the ground that the verdict is contrary to the law and the evidence."

In *Norfolk & Western Ry. Co.* v. *Rhodes*, 109 Va. 176, 63 S. E. 445, it appeared that the bill of exceptions, which, after certifying that the plaintiff and defendant each introduced evidence, said "all of which evidence, both for the plaintiff and the defendant, is found in a type-written booklet now marked 'A', and is adopted by the court as the evidence introduced by the plaintiff and the defendant, and that it contains all the evidence offered by them," it was held that the bill of exceptions sufficiently identified the evidence, and made it a part of the record of the case.

In *Standard Peanut Company* v. *Wilson*, 110 Va. 650, 66 S. E. 772, it was held that "It must appear, from the record itself, when the bill of exceptions was signed and thereby made a part of the record. That fact cannot be made to depend upon parol evidence. Neither parol evidence, nor custom, nor long practice in a particular court, will avail to add to or take from the record as made under the supervision of the trial judge. A statement by the clerk, which is no part of the final order in a cause, and not authorized by the trial judge, but which is inserted by him in making up the record for this court, that 'the bills of exception referred to in the foregoing order are in the words and figures following—to-wit,' is no part of the record."

In *Hot Springs Lumber Co.* v. *Revercomb*, 110 Va. 24, 65 S. E. 557, speaking of identification of bills of exceptions, the court said: "If not so identified within the time prescribed by law for taking the bill, it cannot be so identified afterwards." "The identification of the evidence to be inserted in a bill of exception is a judicial act, to be performed by the judge himself, within the time prescribed for filing the bill, and cannot be delegated to the clerk. A skeleton bill, containing such expressions as 'here insert the evidence,' without ear-marking the evidence to be inserted, is not a compliance with the law."

The citations which we have given show what the law is in this court, and it differs in no respect from the practice in other courts.

In the case of *Atchison, &c. R. Co.* v. *Wagner*, 19 Kan. 335, the opinion was delivered by Judge Brewer, afterwards a distinguished justice of the Supreme Court. Speaking of bills of exceptions, he said: "A bill of exceptions is a record, and, like any other record, is not to be established by parol testimony, but must carry on its face the evidence of its own integrity and completeness. While what is familiarly known as a skeleton bill—that is, a bill which provides for the subsequent copying by the clerk into it, and as a part of it, some paper or document—is allowed, yet, to make such a bill valid and complete, these rules must be regarded: 1st. The bill, in referring to such paper or document, must purport to incorporate it into and make it a part of the bill; a mere reference to it, although such as to identify it beyond doubt, or a statement that it was in evidence, is not sufficient. 2d. The document must itself, at the time of the signature of the bill, be in existence, written out and complete. 3d. It must be annexed to the bill, and referred to as annexed, or it must be so marked, by letter, number, or other means of identification mentioned in the bill, as to leave no doubt, when found in the record, that it is the one referred to in the bill; and these means of identification must be obvious to all, so that any one examining the record can know what document is to be inserted, or, after insertion, that the clerk has made no mistake."

The decisions of the Supreme Court of the United States are to the like effect.

In *Leftwitch* v. *Lecanu*, 4 Wall. 187, 18 L. Ed. 388, Judge Miller said: "If a paper which is to constitute a part of a bill of exceptions is not incorporated into the body of the bill, it must be annexed to it, or so marked, by letter, number, or other means of identification mentioned in the bill, as to leave no doubt, when found in the record, that it is the one referred to in the bill of exceptions, or it will not be considered." See, also, *Mullen* v. *Ehlers*, 91 U. S. 250, 23 L. Ed. 319; *U. S.* v. *Jones*, 149 U. S. 262, 13 Sup. Ct. 840, 37 L. Ed. 726; *Michigan Ins. Co.* v. *Eldred*, 143 U. S. 293, 12 Sup. Ct. 450, 36 L. Ed. 162; *Origet* v. *U. S.*, 125

U. S. 240, 8 Sup. Ct. 846, 31 L. Ed. 743; *Malony* v. *Adsit*, 175
U. S. 287, 20 Sup. Ct. 115, 44 L. Ed. 163; *Yellow Poplar Lumber
Co.* v. *Chapman*, 74 Fed. 448 (C. C. A.); *Oxford & Coast Line
R. Co.* v. *Union Bank of Richmond*, 153 Fed. 723 (C. C. A.);
*Harvey* v. *State*, 5 Ind. App. 422, 31 N. E. 835; *Shiletto* v. *Thacker*,
43 O. St. 63, 1 N. E. 438; *Coburn* v. *Murray*, 2 Me. 336; *Lynde*
v. *Craney*, 95 Mich. 109, 54 N. W. 879.

Bill of exceptions No. 9 makes no reference to the evidence
as contained in bill of exceptions No. 29, but is complete in itself,
and is as follows: "Allen Talbott, a witness for the Commonwealth,
was asked the following question: 'Taking all of your information,
up to the present time, including your investigation into these
books, have you been able to reach a conclusion that Mr. Thornton
made a true statement as to the condition of this bank?'  A.
'No, sir; it was not a true statement.'  To the introduction of
which evidence the defendant, by counsel, objected, and moved
the court to exclude the same from the jury, on the ground that
the same was not admissible in law on the issue joined," etc.  The
court allowed the evidence to go before the jury, and it was duly
excepted to.

The very issue which the jury were sworn to try was whether
or not the defendant, Thornton, had made a true statement as to
the condition of the bank.  The question and answer take that
issue from the jury, and submit it to the witness, and, upon that
evidence alone, if admissible, the prisoner might have been found
guilty.  It may be said that the witness was an expert, and his
opinion, therefore, admissible in evidence.  It may be said that
if all the evidence before the jury were before the court it would
have justified the question and the answer; but the evidence that
may have been before the jury is not before the court.  It is
contained in bill of exceptions No. 29, and must stand or fall
with that bill of exceptions, and this bill of exceptions must be
treated and considered as though it stood alone in this record,
and, so considered, we have no doubt that it presents reversible
error.

But it is said, on the other hand, that this was not opinion
evidence; that it called for the statement of a fact.  If the ques-
tion had been confined to what the witness had discovered from

an examination of the books, there would be some force in this contention; but the question had a much wider range, and asked for his conclusion resting upon all the information in his possession up to the time the question was asked, "including your investigation into these books, have you been able to reach a conclusion that Mr. Thornton made a true statement as to the condition of this bank?" showing clearly that the witness was not to be confined to a mere examination of the books, but asked to give his conclusion based upon information in his possession, from whatever source derived.

For the foregoing reasons, we are of opinion that the demurrer to the indictment was properly overruled; that the evidence attempted to be presented by bill of exceptions No. 29 was not properly authenticated, and cannot be considered; that the other bills, except bill of exceptions No. 9, are dependent upon the 29th bill, and the rulings of the court which they were designed to bring before us for review cannot be considered; and, finally, that the admission of the testimony contained in bill of exceptions No. 9 was erroneous, and for that error the judgment complained of must be reversed, and the case remanded for a new trial in accordance with the views expressed in the foregoing opinion.

*Reversed.*