## Salem

## LOUIS JENNINGS PATTERSON, JR.

v.

## COMMONWEALTH OF VIRGINIA

No. 0475-85

Decided September 2, 1986

2

COUNSEL

Stuart C. Sullivan, III (Edmunds Coleman; Franklin, Franklin, Denny & Heatwole; Costello, Dickinson, Johnston, Greenlee, Coleman & McLoughlin, on briefs), for appellant.

Margaret Poles Spencer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.** — Appellant, Louis Jennings Patterson, Jr., was convicted in a jury trial on seven counts of embezzling from his former employer, White's Truck Stop, Inc., during the period dated January 1, 1980 through June 30, 1983. On appeal, he challenges the refusal of the trial court to grant him access to certain corporate records, and he argues that the court erred in certain rulings regarding expert testimony. For the reasons stated below, we find error and reverse the convictions, remanding the case for a new trial if the Commonwealth be so advised.

White's Truck Stop, Inc., located off Interstate 81 in Rockbridge County, Virginia, provides services for commercial truck drivers. David A. White owns the business, and first hired Patterson in February 1972. Patterson rose to become president and chief financial officer of the company, a position through which he managed the company's financial affairs. After an accountant allegedly found irregularities in the books which led him to believe that Patterson had been removing funds from the corporation, Patterson was fired on February 1, 1983. The matter was then taken to the appropriate authorities and this prosecution followed.

Patterson defended on two grounds. First, he claimed that he had broad authority to approve all expenditure of funds. He contended that this authority derived from a 1978 arrangement in which he personally loaned the corporation $136,000. Second, he argued that the types of transactions which he had engaged in were a common and accepted practice among members of this closely held corporation. In order to attempt to prove the facts relevant to his defense, Patterson sought, prior to trial, certain corporate records pursuant to then existing Rules 3A:14[1] (hereinafter referred to as the *Brady*[2] motion) and 3A:15[3] (hereinafter referred to as the motion for a subpoena *duces tecum*). At issue were requests for the production of the corporate minute books and for other corporate records and documents relating to the financial transactions of others in the corporation. The court ruled that only the corporate records involving Patterson's transactions were relevant to the proceedings, and refused to order the produc-

---

[1] Changed to Rule 3A:11 effective July 1, 1984.
[2] *Brady v. Maryland*, 373 U.S. 83 (1963).
[3] Changed to Rule 3A:12 effective July 1, 1984.

tion of documents relating to four other named employees of the company. In reference to the minute book, the court determined that it would examine the book *in camera*, and photocopy any relevant pages for distribution to Patterson.

At trial, Richard A. Nossen, an expert in the investigation, detection and analysis of financial crimes, testified that he had reviewed financial documents which had been introduced by the Commonwealth. Through his analysis of the documents, he concluded that some of the transactions were "irregular." For example, Nossen stated that the "same vendor" method appeared to have been used whereby an individual would retain for his personal use the services of tradesmen who also provided services to the company. Tradesmen would present invoices to the company seeking payment for those services. Nossen maintained that the invoices for the individual's personal work were mixed with invoices for company work, thus causing the company to pay for services rendered to the individual. Additionally, Nossen described a second irregular transaction, the "journal adjusting entry." White's Truck Stop maintained a fund from which its employees could borrow money for their personal use. Once the money was borrowed, an entry in that amount was placed in the records of that employee's "accounts receivable." Nossen testified that on various occasions Patterson borrowed money by this method. However, the books indicated that he was relieved of the obligation of repaying these sums due to adjustments made on various journal entries. Most noticeable, according to Nossen, were erasures on Patterson's "employee accounts receivable" record.

After explaining these two techniques, Nossen was asked whether he was able to form an opinion as to the "regularity" of the erasures on Patterson's "employee accounts receivable" records. Nossen stated that "the erasures that I found there would constitute a highly irregular action on the part of the person who made them." Later in his testimony, Nossen again stated that an entry was "highly irregular." When asked by the Commonwealth why this was so, Nossen replied: "Because it - it just doesn't conform to proper bookkeeping and accounting practices." Still later, Nossen again described a transaction as "highly irregular." Patterson objected, arguing that these characterizations went to the ultimate issue in the case and invaded the province of the jury. The court overruled the objections.

Nossen was also asked whether he was able to form an opinion as to the regularity of the transactions involving purchases from the same vendors. Nossen stated: "It is a common embezzlement technique." Patterson objected and moved for a mistrial. The court sustained the objection, struck the question and the response, denied the motion for a mistrial, and instructed the jury to disregard the statement. The court told the jurors that Nossen's testimony was offered only to assist them, and that they should form their own opinions as to Patterson's guilt or innocence.

Nossen also stated that his testimony and a summary chart used to assist him in that testimony were based upon:

> a review of the documentary evidence that has been received here, a summary of the oral testimony that was furnished to me by Mr. Kaestner [a private prosecutor employed by White's Truck Stop, Inc. to assist the Commonwealth] and .
> . . .
>
> * * *
>
> based upon my review of the books and records, and based upon my preparation of the trial schedule.

Patterson moved to strike all of Nossen's testimony, arguing that the testimony was based on out-of-court summaries of the testimony of other witnesses furnished to him by the private prosecutor. The trial court ruled that the testimony forming the basis of Nossen's opinion was in evidence, and overruled Patterson's objection.

The following issues are presented for our consideration:

> 1. Whether the trial court erred in refusing to permit Patterson to have access to certain corporate records of White's Truck Stop, Inc., thereby preventing Patterson from presenting evidence in support of his theory of the case;
>
> 2. Whether the testimony of the Commonwealth's expert witness was required to aid the jurors in their determination, and whether that testimony invaded their exclusive province by going to the ultimate issue in the case;
>
> 3. Whether the trial court erred by refusing to grant a mistrial when the Commonwealth's expert witness spoke to the ultimate issue in the case;

4. Whether the Commonwealth's expert witness used an improper basis in forming his opinion of Patterson's actions, and if so, whether that error requires reversal.

I.

Through a *Brady* motion and a motion for a subpoena *duces tecum*, Patterson sought access to certain corporate records of White's Truck Stop, Inc. Patterson attacks the trial court's ruling restricting his access to those portions of the corporate minute book which specifically refer to Patterson or to the general functions of the corporate officers. Additionally, he attacks the trial court's response to his motion for a subpoena *duces tecum*.[4]

---

[4] The Court ruled, in pertinent part, that the following materials must be produced:

— All accounts receivable ledger cards prepared from 7-column worksheets, along with supporting receipts, for Louis Jennings Patterson, Jr.; this request includes a request for production of the ledger cards relating to account numbers 110, 111, 114 and 117; and this request covers the period of time of January 1, 1978, through March 1, 1983. Counsel for the defendant objected to the extent that the request was not granted with respect to David A. White, Margaret P. White, Jennifer White (later Jennifer White Pilgren), and Richard Chambers. The objection was based on the manner in which business was conducted by the sole stockholder, the other officers, directors and employees throughout this period.

. . .

— All paid out forms, with supporting documents and receipts, and memoranda, and notations thereon, for Louis Jennings Patterson, Jr.; this request covers the period of January 1, 1972, to March 1, 1983.

Counsel for the defendant objected to the extent that the request was not granted with respect to David A. White, Margaret P. White, Jennifer White (later Jennifer White Pilgren), and Richard Chambers. The objection was based on the manner in which business was conducted by the sole stockholder, the other officers, directors and employees throughout this period.

— Expense reports and receipts, and all memoranda and notations thereon, for Louis Jennings Patterson, Jr.; this request covers the period of January 1, 1978, to March 1, 1983.

Counsel for the defendant objected to the extent that the request was not granted with respect to David A. White, Margaret P. White, Jennifer White (later Jennifer White Pilgren), and Richard Chambers. The objection was based on the manner in which business was conducted by the sole stockholder, the other officers, directors and employees throughout this period.

— All credit card bills, statements, and receipt for the following credit cards:

| | |
|---|---|
| Diners Club | American Express |
| Carte Blanche | Master Charge |
| Visa | Master Card |
| Gulf Oil | Exxon |
| Union 76 | Texaco |

Patterson objects to the limitations contained in this order. Patterson also sought access to the minute book by means of the same motion for a subpoena *duces tecum.*

■ *Cox v. Commonwealth*, 227 Va. 324, 315 S.E.2d 228 (1984), established the framework for courts to analyze a motion for a subpoena *duces tecum.* Cox was convicted of embezzling funds from the City of Fairfax. Cox filed a pretrial motion for a subpoena *duces tecum* seeking production of certain bank records. When the banks failed to produce a large amount of the requested material, the trial court conducted a hearing and ruled that the bank records were not material, and denied a request for a continuance. The Supreme Court held that the trial court erred in finding that the bank records were not material. The Court stated:

> Article 1, § 8, of the Constitution of Virginia provides that, in criminal prosecutions, the accused has the right "to call for evidence in his favor." This unqualified right includes "the right to prepare for trial which, in turn, includes the right to interview material witnesses and to ascertain the truth." *Bobo v. Commonwealth*, 187 Va. 774, 779, 48 S.E.2d 213, 215 (1948). *See also Winston v. Commonwealth*, 188 Va. 386, 49 S.E.2d 611 (1948). This right applies with equal force to the procurement of documentary evidence.

> When a defendant seeks disclosure of evidence, the standard to be applied in determining its materiality is whether "a substantial basis for claiming materiality exists." *United*

---

American Oil Company

for Louis Jennings Patterson, Jr. If a separate file was maintained for each or any of the aforesaid credit cards, produce the file and its enclosures. This request covers the period of time of January 1, 1978, to March 1, 1983.

Counsel for the defendant objected to the extent that the request was not granted with respect to David A. White, Margaret P. White, Jennifer White (later Jennifer White Pilgren), and Richard Chambers. The objection was based on the manner in which business was conducted by the sole stockholder, the other officers, directors and employees throughout this period.

— Detailed earning records, including W-2 statements for Louis Jennings Patterson, Jr. This request covers the period of time of January 1, 1972, to March 1, 1983.

Counsel for the defendant objected to the extent that the request was not granted with respect to David A. White, Margaret P. White, Jennifer White (later Jennifer White Pilgren), and Richard Chambers. The objection was based on the manner in which business was conducted by the sole stockholder, the other officers, directors and employees throughout this period.

*States v. Agurs*, 427 U.S. 97, 106 (1976). If materials in the hands of third parties "could be used at the trial," they are the proper subject of a subpoena *duces tecum. Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951).

In the present case, the Commonwealth virtually conceded some of the bank records were "necessary and material to prove the Commonwealth's case," and the defendant produced witnesses, albeit at trial, who testified regarding the materiality of the records. Moreover, the Commonwealth's witnesses relied in part upon some of these very records.

*Id.* at 328, 315 S.E.2d at 230.

■ The Supreme Court of Virginia recently adopted a test to be used to determine if evidence not disclosed to the defense was "material." In *Robinson v. Commonwealth*, 231 Va. 142, 341 S.E.2d 159 (1986), a crucial prosecution witness had "failed a polygraph test administered by the police." *Id.* at 147, 341 S.E.2d at 162. This information was not revealed to the defense until the fourth day of trial, even though a *Brady* motion had been filed prior to trial. Upon disclosure of the information, the defense moved for a mistrial or a continuance to assess the impact of this seemingly exculpatory material. The court denied the motion. The Supreme Court affirmed, but defined "materiality" in the process, adopting the language used by the United States Supreme Court in *United States v. Bagley*, 473 U.S. ____, 105 S. Ct. 3379 (1985). That Court held:

The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*Id.* at ____, 105 S. Ct. at 3384. The *Robinson* Court determined that the "probability" did not exist in that case.

■ Applying this test to the facts of the instant case, we conclude that a "reasonable probability" does exist that undermines our confidence in the outcome of the trial proceeding. Through his motion for a subpoena *duces tecum*, Patterson sought access to documents which he claimed would prove that there was an infor-

mal agreement among the members of this closely held corporation that the members, including Patterson, were entitled to use corporate accounts for personal purposes. While we do not condone the possible tax evasionary implications of these tactics, we nevertheless recognize that the existence of such a scheme would negate the element of intent required for a conviction of embezzlement from White's Truck Stop, Inc. "Since the crime of embezzlement depends upon the existence of a fraudulent intent . . . a wide scope is given to the evidence which may be introduced . . . in behalf of the defense to show the absence thereof." *Page v. Commonwealth*, 148 Va. 733, 741, 138 S.E. 510, 512 (1927) (quoting *State v. Moyer*, 58 W.Va. 146, 151, 52 S.E. 30, 33 (1905)); *see also Bourgeois v. Commonwealth*, 217 Va. 268, 273, 227 S.E.2d 714, 718 (1976). Patterson contends that he had the authority to engage in the "irregular" bookkeeping transactions and that the prosecution against him was commenced because of a "falling out" between White and himself. Evidence of business practice and custom is often admitted to assist in interpreting contracts between parties, and in clarifying the intent of the parties in contracting. C. Friend, The Law of Evidence in Virginia § 151 (2d ed. 1983). The denial of access to the required documents raises a "reasonable probability" that Patterson was unable to effectively assert his defense. For this reason, we reverse the rulings of the trial court which limited access accorded Patterson to the corporate minute book and the other materials listed in footnote 4. Upon remand, if a retrial is to be held, we instruct the court to fully grant the motion for a subpoena *duces tecum* previously submitted by Patterson. We are not, by granting access to records which may be critical to the defense, ruling on the admissibility of such evidence at trial. Whether the evidence is material and relevant in proving or refuting an intent to embezzle is for the trial court to determine.

Patterson also claims that his *Brady* motion entitles him to have access to these documents. He concedes that documents not in the possession, control or custody of the Commonwealth cannot be discovered by a *Brady* motion. *Barker v. Commonwealth*, 230 Va. 370, 377, 337 S.E.2d 729, 734 (1985). However, Patterson argues that the employment of a private prosecutor, hired by White's Truck Stop to work with the Commonwealth, effectively brings the documents within the possession, control or custody of the Commonwealth, and hence are discoverable under *Brady*. We do

not reach the merits of this argument due to our holding that the trial court erred in limiting Patterson's access to the documents pursuant to his motion for a subpoena *duces tecum*.

## II.

Patterson also challenges the trial court's ruling with reference to the Commonwealth's expert witness. First, he contends that the court erred in allowing expert testimony regarding accounting procedures because the testimony was unnecessary to aid the jurors in their determination. Second, he argues that the court improperly allowed the expert to voice an opinion on the ultimate issue in the case. We address these arguments in the order presented.

As Patterson noted in his opening brief, the standard to be applied in Virginia concerning the admissibility of expert testimony was succinctly enunciated in *Coppola v. Commonwealth*, 220 Va. 243, 252, 257 S.E.2d 797, 803-04 (1979):

> [E]xpert testimony concerning matters of common knowledge or matters as to which the jury are as competent to form an opinion as the witness is inadmissible. Where the facts and circumstances shown in evidence are such that men of ordinary intelligence are capable of comprehending them, forming an intelligent opinion about them, and drawing their own conclusions therefrom, the opinion of an expert based upon such facts and circumstances is inadmissible.

Here, the trial court instructed the jury on the purpose of and weight to be given Nossen's testimony. The court stated:

> This witness is here because there are accounting techniques involved, and bookkeeping techniques that are probably outside the ordinary transactions of most people who serve on juries, or, for that matter, who serve in the court system. This witness is here to assist you, and for that purpose only. The decision, again, as to the ultimate question of guilt or innocence is only yours.

■ It is well established that the admissibility of expert testimony is within the sound discretion of the trial court, and that court's decision will not be disturbed absent an abuse of discretion. *Thorpe v. Commonwealth*, 223 Va. 609, 614, 292 S.E.2d 323, 326 (1982). The trial court found that Nossen's testimony would be an aid to the jurors because the accounting techniques involved were likely to be outside the range of experience of most jurors. We find no abuse of discretion.

Patterson also argues that the trial court erred in permitting Nossen to state that certain bookkeeping transactions were "irregular." He argues that, in the context presented, "irregular" was a not-so-subtle synonym for illegal. Thus, Patterson contends that Nossen improperly expressed an opinion on the case's ultimate issue, thus violating the Virginia rule of law in criminal cases. *Bond v. Commonwealth*, 226 Va. 534, 538, 311 S.E.2d 769, 771-72 (1984).

Patterson primarily relies on two cases in support of his argument. In *Mitchell v. Commonwealth*, 141 Va. 541, 127 S.E. 368 (1925), a bank officer was convicted of making entries with the intent to conceal the true standing of his own account. The Commonwealth asked a non-expert witness:

> Will you state whether or not the effect of such entries made upon the books of the bank would be to conceal the true state of the account of John Mitchell, Jr., in the bank?

*Id.* at 565, 127 S.E. at 376. The witness answered: "Yes." The Supreme Court reversed the conviction because the witness spoke to the ultimate issue.

In *Webb v. Commonwealth*, 204 Va. 24, 129 S.E.2d 22 (1963), the defendant was convicted of embezzlement. A witness was asked what was the "effect" of two unrecorded receipts prepared by the defendant. In essence, the witness replied that they had the effect of replacing funds converted by the defendant for her own use. *Id.* at 33, 129 S.E.2d at 29. This was the ultimate issue in the case. The Supreme Court found error, and reversed.

In a similar fashion, the Supreme Court has ruled, for example, that (a) an expert in a capital murder case cannot state that the defendant did not "deliberate and premeditate at the time of the

killing," *Waye v. Commonwealth*, 219 Va. 683, 696, 251 S.E.2d 202, 210 (1979); (b) an expert in a rape trial improperly testified that the two victims had indeed been "raped," *Cartera v. Commonwealth*, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978); and (c) an expert improperly testified that a statement made to the State Corporation Commission was "not a true statement," when the falsity of the statement was the ultimate issue in the case, *Thornton v. Commonwealth*, 113 Va. 736, 744-45, 73 S.E. 481, 484-85 (1912).

In the present case, we are unconvinced that Nossen's testimony regarding the "irregular" transactions went to the ultimate issue in the case. Patterson claims that he had the broad authority to engage in these transactions, and that others in the corporation did the same. The fact that transactions were "irregular" is not synonymous with their being illegal, or amounting to embezzlement. Indeed, Nossen highlighted the fact that his use of the term "irregular" concerned normal bookkeeping procedures, not the legality or illegality of the transactions. When asked why the entries were "irregular," he replied: "Because it - it doesn't conform to proper bookkeeping and accounting procedures." Seen in this light, we find that the trial court did not err in permitting Nossen to testify as he did.

## III.

Patterson argues that the court erred in failing to grant a mistrial when Nossen testified that the "same vendor" technique was a "common embezzlement technique." The court instructed the jury to disregard the question and answer. Patterson argues that the presumption that an improper remark can be cured by admonishing the jury is overcome in this instance due to the highly prejudicial nature of Nossen's statement. *See Stotler v. Commonwealth*, 2 Va. App. 481, 485, 346 S.E.2d 39, 41 (1986). Due to the fact that we are reversing and remanding this case, we need not address the question whether the presumption was overcome in this instance.

## IV.

Patterson contends that the trial court committed reversible error in not striking all of Nossen's testimony because that testi-

mony was based, in part, on the private prosecutor's out-of-court summary of the testimony of other witnesses. Nossen stated that his testimony was based on (a) a review of the documentary evidence in the case, (b) a summary of the other witnesses' testimony as related by the private prosecutor, (c) a review of the corporate books and records, and (d) his preparation of the "trial schedule." The court overruled Patterson's objection, stating: "The testimony [of the other witnesses] is in evidence. That's the thing."

This question is governed by *Simpson v. Commonwealth*, 227 Va. 557, 318 S.E.2d 386 (1984). There, in a capital murder trial, the Commonwealth's expert witness testified concerning the purported sequence of events leading to the victim's death. The Court stated:

On cross-examination, Dr. Massello [the expert witness] admitted that his opinion was based upon his observations at the autopsy, which he conducted personally; his medical experience and training; the medical examiner's investigative report of death, which was in evidence; and the records of St. Paul Hospital, which were not in evidence. Simpson moved to strike the opinion, which was the only evidence relating Tabron's [the victim's] death to the crime, because of its partial reliance upon the hospital records.

*Id.* at 565, 318 S.E.2d at 391.

The Court noted that, as a general rule, experts in criminal cases in Virginia may give opinions based only on either their own knowledge, or on the facts presented to them in a hypothetical. *Id.* The Court specifically held that Code § 8.01- 401.1, which deviates from this rule, applies only to civil actions. *Id.* at 566, 318 S.E.2d at 391. However, the Court found that the expert's opinion had a sufficient factual basis for admission without reference to the out-of-court hospital records.

In conducting this analysis, the court implied, without explicitly so stating, that the hospital records were not a legitimate basis on which the expert could form an opinion. Without ever declaring it error, the Court held that the opinion was harmless in that instance because of the "more than sufficient" foundation formed by the other bases of the expert's opinion.

In the present case, we disagree with the trial court's ruling. It is true, as the court stated, that the testimony of the other witnesses was in evidence. This is not the point, however. Nossen's opinion was based not on that testimony, but on an out-of-court summation of that testimony. Neither Nossen, the court, the jury, nor we have any way to judge the accuracy and reliability of that summation. Nor can we assess the impact that the summation had on Nossen's testimony. As such, we hold that it was error for the court to allow Nossen to use the out-of-court summation as a basis for his opinion. In so doing, we in no way question the integrity of the private prosecutor or imply that he would intentionally color the summation given Nossen. However, the mere fact that, under the circumstances, the summation was given is sufficient to establish error. Due to the fact that we are reversing and remanding on other grounds, we need not consider whether this error was harmless.

*Reversed and remanded.*

Coleman, J., and Moon, J., concurred.