COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Malveaux and Senior Judge Annunziata
Argued at Norfolk, Virginia

PUBLISHED

MARVIN KENDELL MIDGETTE

v.      Record No. 1692-17-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE MARY BENNETT MALVEAUX
OCTOBER 30, 2018

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge

T. Gregory Evans, Assistant Public Defender, for appellant.

David M. Uberman, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Marvin Kendell Midgette ("appellant") was convicted of perjury, in violation of Code

§ 18.2-434. On appeal, he argues that the trial court erred in finding that collateral estoppel did not

bar his perjury prosecution, as the issue of the accuracy and authenticity of a video and appellant's

testimony regarding it was already determined in a prior proceeding. Further, he contends that the

trial court erred in allowing an expert witness to testify as to an ultimate issue in the case. For the

following reasons, we affirm.

I.  BACKGROUND

The Traffic Stop

On the morning of April 13, 2015, Officer Clifford Hagen of the Virginia Beach Police

Department was monitoring traffic at the intersection of Ferrell Parkway and Indian Lakes

Boulevard. Where Hagen was stationed, the road had four lanes—one left turn lane, two straight

travel lanes, and one right turn lane. While Hagen was sitting in the left turn lane of Ferrell

Parkway he saw appellant drive through a red light in the left straight travel lane. Hagen saw

that the light was "clearly red" before any part of appellant's vehicle crossed into the intersection. At approximately 8:02 a.m., Hagen stopped appellant. Hagen testified that at no time before the traffic stop was he in the same lane as appellant.

During the traffic stop, appellant was polite, but "wanted to debate the situation." Appellant told Hagen that he thought the traffic light was yellow. Appellant asked Hagen how he could see the traffic signal due to the sun and without his sun visor down. Appellant wanted to get out of his vehicle to look at the intersection. Hagen told him that he could do that after the traffic stop concluded, but advised it was not a good idea due to the heavy traffic. Appellant asked Hagen if he had a camera in his vehicle, and Hagen told him that he did not.

### The Traffic-Infraction Trial

Appellant was found guilty of disregarding a red light in the general district court. He appealed his conviction to the circuit court, where the case was set for trial on August 6, 2015. However, on that date, appellant notified the circuit court that he had "existing video evidence that he did not have with him that he wanted to introduce" at trial. The case was continued to September 3, 2015.

During the September 3 traffic-infraction trial in the circuit court,[1] appellant testified that the light was yellow when he drove through it. He also testified that Hagen was following behind him in traffic. During appellant's cross-examination of Hagen, appellant asked him, "Didn't I ask you to look at my video when we were out there? Why wouldn't you look at my video?"[2] At appellant's perjury trial, Hagen did not recall that appellant had asked him to look at a video during the traffic stop.

---

[1] There is no transcript of the traffic-infraction trial. The events of this trial were established through testimony from Commonwealth witnesses during appellant's perjury trial.

[2] Appellant represented himself at the circuit court traffic-infraction trial.

Appellant entered into evidence a video on a flash drive for the court to review. The video purported to depict the traffic stop at issue. The video showed appellant travel through a green light at the intersection of Ferrell Parkway and Indian Lakes Boulevard. Hagen informed the court that he thought that appellant's video was not accurate.

Gerald Harris, the assistant Commonwealth's attorney who prosecuted appellant's circuit court traffic-infraction trial, testified at appellant's perjury trial that appellant had elected to testify and was placed under oath prior to his testimony. Harris was alerted to a possible issue with the video's authenticity by Hagen, who tried to object to the video. Harris began to think that there was "something curious" about the video from Hagen's perspective. Because of this potential issue, Harris specifically asked appellant if the video depicted "what happened on that day truly and accurately," and appellant responded in the affirmative. Harris also thought it was odd that the video included audio of appellant claiming that the traffic light was yellow, when the video depicted appellant driving through a green light. Harris questioned appellant about this apparent discrepancy, and appellant stated that the light was "green all the way up until [appellant] got underneath it and then it must have turned yellow." Harris also asked appellant if he understood that he was under oath, to which appellant responded affirmatively.

During the perjury trial, after appellant's counsel had Hagen read testimony from the preliminary hearing for the perjury charge, counsel asked Hagen if the judge presiding over the traffic-infraction trial had stated that "he had to go with the evidence before him." Hagen replied, "Yes. He was informing me that he was looking at the video and he had to go by the video." The judge also told Hagen that it was "no reflection on [Hagen's] credibility as an officer."

At the conclusion of the traffic-infraction trial, the court found appellant not guilty of disregarding a red light. However, the court ordered that the flash drive be held in evidence "to

be examined for accuracy." Appellant protested and repeatedly asked for the flash drive to be returned to him. The flash drive was admitted into evidence and then placed in the circuit court clerk's office. A search warrant was issued for the flash drive, and a Virginia Beach police officer took possession of it.

The Perjury Trial

At appellant's perjury trial, the Commonwealth played the video that appellant had presented at the traffic-infraction trial. Hagen testified to inaccuracies concerning the traffic stop that he saw in the video. Hagen stated that the audio on the video was accurate as to his recollection of the traffic stop, but was "cut off at the end before [their] dialogue was complete." He further testified that images in the video were accurate as to the time period after he had stopped appellant, but were not accurate as to events that had occurred before the traffic stop. Hagen noted several inaccuracies in the video's depiction of the events prior to the stop: the video showed appellant driving through a green traffic signal; Hagen's police vehicle was not observable in the video, when it should have been visible in the left turn lane; the video depicted appellant driving in the right straight travel lane, when Hagen recalled appellant driving in the left straight travel lane adjacent to the turn lane; the traffic depicted in the video was lighter than the weekday morning work traffic; the video showed the sun too high in the sky for 8:02 a.m.; and Hagen recalled appellant driving at a much faster speed than was shown in the video.

Sergeant Ryan Jason, a member of the Virginia Beach Police Department Computer Crimes Unit, was qualified at trial as an expert in computer forensics, and his report of the analysis of appellant's flash drive was entered into evidence.

Jason discovered two relevant video files on appellant's flash drive. The files, which were titled "New Project MDCar Cam" and "Car Mobile Cam 2," had "two very distinct hash

values." Jason explained that a file's hash value was "essentially a digital fingerprint which identifies the fact that no contents have been changed between point A and B."

Jason testified that "New Project MDCar Cam," the video played during appellant's September 3, 2015 traffic-infraction trial, was placed on the flash drive on September 3, 2015, at 9:22 a.m. Its metadata revealed that the file was also created on September 3, 2015, at 9:22 a.m.[3] The video was thirteen minutes long. During the first minute and a half, its audio was "very muted" before "just cut[ting] in immediately right around that one minute, thirty-second mark." Jason explained:

> [W]hen I separated the audio from the video you could see a flatline for approximately the first minute and thirty seconds of the video itself . . . which is important . . . . [W]hen you have a microphone in a car you're going to get road noise. You're going to get air noise across the microphone. Both of those are going to cause some anomalies.

Jason also noted that the video panned around "quite a bit," and in some instances the video displayed the rearview mirror and at other times it displayed the hood of the vehicle. At some point during the video, it panned upwards toward the sky where the sun was located, "like if . . . the recording device was used to pan up and down." Jason noted that the title "New Project" is a name often used by software programs when a project is created from an existing project and "work[ed] on . . . to produce a final edit." He stated that it would be an unusual name for a direct transfer of a dash camera video, as "most users would just copy and paste and wouldn't change the file name."

The second video, "Car Mobile Cam 2," had been saved on appellant's flash drive on September 3, 2015, at 8:28 a.m. Its metadata revealed a creation date of August 6, 2015, at 10:57 a.m. Jason noted that the video was approximately thirteen minutes long but would only

---

[3] Jason's report explained that "[m]etadata is written into the file when it is being created, not written to the folder in which the file is placed which is how the created date is stored."

play for approximately six and a half minutes. The audio would start to play immediately, but at the minute and a half mark, there was a "bit of audio distortion" where the sound went from a "little bit of audible noise to a flatline" before becoming audible again.

Following this testimony, the Commonwealth asked Jason, "Based on everything that you've observed while you were conducting your analysis were you able to form an opinion on whether this video is accurate and unaltered?" Counsel for appellant objected, arguing that the Commonwealth was asking Jason to give an opinion on one of the ultimate issues in the case. The Commonwealth responded that the ultimate issue was whether appellant committed perjury and that it was not asking Jason to testify as to that; rather, it was asking him about "whether alterations had been made to this video based on his expert forensic analysis of the item." The court overruled appellant's objection and permitted Jason to answer the question.

In response to the Commonwealth's question of whether the video was accurate and unaltered, Jason stated that he thought that "[t]he video was unaltered," but did not "believe that [the video] was a true and accurate representation as the two files themselves did contradict each other." Jason then explained the factors he considered in forming his opinion that the video was not a true and accurate representation: the hash values of the two videos were different; appellant's statement that the light was yellow was inconsistent with the green light shown in the video; if the video had been merely copied over, "the video and the audio would go as one"; the metadata indicated that neither file was created in April 2015; and the unusual movement of the camera. Jason testified that he formed his opinion concerning the video's accuracy mainly based upon "the metadata, the hash values, and the differences between the two videos."

At the close of the Commonwealth's case, appellant moved to dismiss the case based on collateral estoppel grounds. Appellant argued that "the fact of whether that video was correct or not was essentially adjudicated by the trial judge in [the traffic-infraction] case with his

commentary that he has to go upon the evidence before him[,] . . . [in] referenc[e] [to] the video in that case which he had just seen." The court denied appellant's motion, and convicted him of perjury, noting that it found that

> it's clear from the evidence that this particular video along with the audio or portions of the audio did not exist on the date when you received your ticket. And that . . . when you stated that the video truly and accurately depicted what had occurred on that day was, in fact, a false statement and was perjury.

Appellant appeals his conviction.

## II. ANALYSIS

### A. Collateral Estoppel

On appeal, appellant argues that the trial court erred in finding that collateral estoppel did not bar his perjury prosecution because the issue of the accuracy and authenticity of the video and appellant's testimony regarding it was already determined in a prior proceeding.

> Because collateral estoppel involves mixed questions of law and fact, not pure questions of law, we apply a *de novo* standard of review as to . . . whether collateral estoppel is applicable but we are bound by the underlying factual issues as determined by the fact finder unless they are plainly wrong or unsupported by the evidence.

Commonwealth v. Davis, 290 Va. 362, 368-69, 777 S.E.2d 555, 558 (2015) (quoting Loudoun Hosp. Ctr. v. Stroube, 50 Va. App. 478, 493, 650 S.E.2d 879, 887 (2007)).

"Collateral estoppel is a doctrine of fact preclusion that is 'embodied in' the Fifth Amendment 'protection against double jeopardy.'" Pijor v. Commonwealth, 294 Va. 502, 508, 808 S.E.2d 408, 411 (2017) (quoting Simon v. Commonwealth, 220 Va. 412, 415, 258 S.E.2d 567, 569 (1979)). "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970). "Collateral estoppel, as applied in criminal proceedings, becomes applicable only when the defendant's prior acquittal necessarily

resolved a factual issue that the Commonwealth seeks to litigate again in a subsequent proceeding." Commonwealth v. Leonard, 294 Va. 233, 239, 805 S.E.2d 245, 249 (2017). Thus, collateral estoppel "does not apply if it appears that the prior judgment could have been grounded 'upon an issue other than that which the defendant seeks to foreclose from consideration.'" Lee v. Commonwealth, 219 Va. 1108, 1111, 254 S.E.2d 126, 127 (1979) (quoting Ashe, 397 U.S. at 444).

In Whitley v. Commonwealth, 260 Va. 482, 538 S.E.2d 296 (2000), our Supreme Court listed four requirements for the application of collateral estoppel:

> (1) the parties to the two proceedings must be the same; (2) the factual issue sought to be litigated must have been actually litigated in the prior proceeding; (3) the factual issue must have been essential to the judgment rendered in the prior proceeding; and (4) the prior proceeding must have resulted in a valid, final judgment against the party to whom the doctrine is sought to be applied.

Id. at 489, 538 S.E.2d at 299.

"When a defendant seeks to invoke collateral estoppel, he or she bears the 'burden of proving that the precise issue or question he seeks to preclude was raised and determined in the first action.'" Davis, 290 Va. at 369, 777 S.E.2d at 558 (quoting Clodfelter v. Commonwealth, 218 Va. 98, 106, 235 S.E.2d 340, 345 (1977)).

Appellant argues that his prosecution for perjury should have been barred because the court in his perjury case was relitigating the issue of the accuracy and validity of the video, which was a factual issue that had already been determined in the traffic-infraction trial. However, as an initial matter, we note that appellant mischaracterizes the "factual issue sought to be litigated" for the application of the collateral estoppel bar. Whitley, 260 Va. at 489, 538 S.E.2d at 299. Here, the factual issue is not whether the video appellant presented in his traffic-infraction trial was an accurate depiction of the traffic stop. Instead, in the perjury trial,

the Commonwealth had to prove that appellant made a false statement under oath. See Code § 18.2-434 ("If any person to whom an oath is lawfully administered on any occasion willfully swears falsely on such occasion touching any material matter or thing . . . he is guilty of perjury."). Thus, in this case, the factual issue sought to be litigated is whether appellant testified falsely that the video was accurate.

We do not have a transcript of the traffic-infraction trial. The only evidence of what was presented at that trial was offered through the testimony of two Commonwealth witnesses, Officer Hagen and Gerald Harris. From their testimony, the following facts are evident. During the trial, appellant entered into evidence a video purporting to depict the traffic stop at issue. The video showed appellant travel through a green traffic light at the intersection of Ferrell Parkway and Indian Lakes Boulevard. Appellant elected to testify, was placed under oath prior to his testimony, and testified that the video "truly and accurately" depicted the time prior to and during the traffic stop. Officer Hagen raised concerns about the accuracy of the video to the court. The court found appellant not guilty of the offense. The judge informed Hagen that "he was looking at the video and he had to go by the video." The judge also told Hagen that it was "no reflection on [Hagen's] credibility as an officer." The judge then ordered the flash drive be held in evidence "to be examined for accuracy."

Based upon this record, we conclude that the trial court did not err in finding that collateral estoppel did not bar appellant's perjury prosecution. To establish that collateral estoppel applied as a bar to his prosecution, appellant had the burden of demonstrating that "the factual issue sought to be litigated" was "actually litigated in the prior proceeding." Whitley, 260 Va. at 489, 538 S.E.2d at 299. Here, the factual issue was whether appellant testified truthfully when he stated that the video was a true and accurate depiction of the traffic stop. During the traffic-infraction trial, the judge stated that "he was looking at the video and he had to

go by the video." That statement, viewed in isolation, might support the inference that the judge found that appellant's testimony about the video's accuracy was truthful. However, we do not examine that statement in isolation, but rather in light of other statements made by the trial judge. While Officer Hagen testified that the judge stated that "he was looking at the video and he had to go by the video," the judge also told Hagen that it was "no reflection on [Hagen's] credibility as an officer." Hagen also testified that the court ordered that the flash drive be held in evidence "to be examined for accuracy." These statements support an inference that the judge was concerned about the accuracy of the video. They also weaken any reliance on the inference that the trial judge had made a determination as to the accuracy of appellant's testimony about the video based upon his comment that he "had to go by the video."

Taken as a whole, the judge's statements might allow us to make certain competing inferences. However, the statement relied upon by appellant does not allow us to conclude that the court made an explicit finding about the factual issue at hand—whether appellant was testifying truthfully when he stated that the video was an accurate depiction of the traffic stop. This lack of a specific finding is crucial to our conclusion that the doctrine of collateral estoppel does not apply to bar appellant's prosecution for perjury. Cf. Davis, 290 Va. at 372, 777 S.E.2d at 560 (holding that collateral estoppel barred defendant's prosecution for murder or attempted murder because, during a preliminary hearing where defendant was acquitted of a misdemeanor firearm charge, the general district court judge specifically stated that the evidence was insufficient to prove the identity of the shooter).

In the instant case, the record before us indicates only that the judge stated he "had to go by the video," a statement that does not allow us to conclude that the judge had determined whether appellant testified truthfully, especially in light of the judge's order to have the video examined for accuracy. Because the judge's comment that he "had to go by the video" did not

- 10 -

constitute a specific finding as to the truthfulness of appellant's testimony regarding the video, we hold that appellant has failed to meet his burden of proving that the factual issue was actually litigated in the prior proceeding. Thus, the trial court did not err in finding that collateral estoppel did not bar appellant's prosecution for perjury.[4]

## B. Ultimate Issue

Appellant further argues that the trial court erred in allowing an expert witness to testify as to an ultimate issue in the case.

"[T]he admissibility of expert testimony is within the sound discretion of the trial court, and that court's decision will not be disturbed absent an abuse of discretion." Patterson v. Commonwealth, 3 Va. App. 1, 11, 348 S.E.2d 285, 291 (1986).

It is well established in Virginia that an expert witness may provide testimony, including opinions, if the fact finder "'is confronted with issues' that 'cannot be determined intelligently merely from the deductions made and inferences drawn on the basis of ordinary knowledge, common sense, and practical experience gained in the ordinary affairs of life' and thus require 'scientific or specialized knowledge.'" Schooler v. Commonwealth, 14 Va. App. 418, 420, 417 S.E.2d 110, 111 (1992) (quoting Compton v. Commonwealth, 219 Va. 716, 726, 250 S.E.2d 749,

---

[4] Further, we note that, based upon this record, the only issue concerning the video that we find was "actually litigated" in the traffic-infraction trial was whether the video itself was admissible as evidence. "Ordinarily, the admissibility of videotape films is governed by the same rules which apply to the admission of photographs or motion pictures." Stamper v. Commonwealth, 220 Va. 260, 271, 257 S.E.2d 808, 816 (1979). Therefore, "[i]f the court determines that the information on the tape is relevant and that the probative value of its contents outweighs any prejudicial effect, it should be admitted." Brooks v. Commonwealth, 15 Va. App. 407, 410, 424 S.E.2d 566, 569 (1992). However, "the party offering [the videotape] must authenticate it and show that it is relevant." Id. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the thing in question is what its proponent claims." Va. R. Evid. 2:901. To admit the video into evidence, the trial judge had to determine whether the evidence was relevant and whether it had been properly authenticated. These determinations were not findings regarding the actual *accuracy* of the video itself; thus, we conclude that the issues "actually litigated" in the traffic-infraction trial were not the issues at hand in the perjury trial.

755-56 (1979)). However, an expert witness "cannot give his opinion upon the precise or ultimate fact in issue, which must be left to the jury or the court trying the case without a jury for determination." Llamera v. Commonwealth, 243 Va. 262, 264-65, 414 S.E.2d 597, 598 (1992) (quoting Webb v. Commonwealth, 204 Va. 24, 33, 129 S.E.2d 22, 29 (1963)). An expert must not provide such an opinion, because testifying as to the ultimate fact in issue "invades the function of the fact finder." Id. at 264, 414 S.E.2d at 598. See also Va. R. Evid. 2:704(b) ("In criminal proceedings, opinion testimony on the ultimate issues of fact is not admissible.").

In the instant case, Sergeant Jason testified about his analysis of the flash drive and his observations of certain unusual aspects of the videos it contained. Following this testimony, the Commonwealth asked him, "Based on everything that you've observed while you were conducting your analysis were you able to form an opinion on whether this video is accurate and unaltered?" Counsel for appellant objected, but the court overruled the objection and permitted Jason to answer the question. Jason stated that "[t]he video was unaltered," but he did not "believe that it was a true and accurate representation as the two files themselves did contradict each other." Jason then explained what factors he considered in forming his opinion that the video was not a true and accurate representation.

Appellant argues that Jason's testimony that the video was not a "true and accurate representation" was testimony as to an ultimate issue in the case, as "the alleged false representation for purposes of the perjury charge was whether the video submitted by [a]ppellant was a true and accurate representation of what happened during the traffic stop." This argument misconstrues the actual ultimate issue in appellant's perjury case. As noted above, the ultimate issue to be determined in the perjury trial was whether appellant, under oath, willfully swore falsely about a material matter—specifically, whether appellant testified falsely when he stated

- 12 -

that the video introduced at the traffic-infraction trial was an accurate depiction of the traffic stop.

It is clear from the record that Jason did not testify that appellant testified falsely during the traffic-infraction trial. Rather, Jason testified that he did not "believe that [the video] was a true and accurate representation as the two files themselves did contradict each other." This testimony about truth and accuracy of the video's depiction of the traffic stop itself was not testimony as to an ultimate issue, as it was appellant's false testimony, not the video's accuracy, that was the ultimate issue in the perjury trial. Instead, Jason's testimony about the accuracy of the video was an evidentiary fact useful to the court in deciding the ultimate fact in issue— whether appellant testified untruthfully when he stated the video was an accurate depiction of the traffic stop.

Appellant cites Thornton v. Commonwealth, 113 Va. 736, 73 S.E. 481 (1912), in support of his argument that the expert here testified as to an ultimate issue in the case. We disagree, and find that instead, the facts in Thornton provide an illustrative contrast to the facts of this case. In Thornton, a bank employee was charged with making a false statement about the financial condition of his bank to the State Corporation Commission. Id. at 737, 73 S.E. at 481. The Commonwealth's expert witness, an accountant, expressly testified that defendant made a false statement. Id. at 744, 73 S.E. at 484. The Court reversed defendant's conviction on the basis that the expert had not confined his opinion to "a mere examination of the books." Id. at 745, 73 S.E. at 485. In Thornton, the ultimate issue was whether defendant made a false statement, and the expert testified that defendant did in fact make a false statement. In contrast, the ultimate issue in appellant's perjury trial was whether he testified falsely, and, as noted above, Jason clearly did not testify that appellant gave false testimony in the traffic-infraction trial.

Here, it is clear that Jason did not express an opinion on the ultimate issue in the perjury case. Accordingly, the trial court did not abuse its discretion by admitting the expert witness' testimony.

## III. CONCLUSION

We hold that the trial court did not err in finding that collateral estoppel did not bar appellant's perjury prosecution. Further, the trial court did not err in admitting the expert witness' testimony, because his testimony was not testimony as to an ultimate issue in the case. Therefore, we affirm.

<u>Affirmed.</u>