PRESENT: Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Roush, JJ., and Russell, S.J.

COMMONWEALTH OF VIRGINIA

v.  Record No. 141674

RONALD TAFT DAVIS, III

OPINION BY
CHIEF JUSTICE DONALD W. LEMONS
October 29, 2015

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider the preclusive effect of a misdemeanor acquittal on subsequent felony convictions, when the misdemeanor and felony charges arose from the same course of conduct and the trier of fact provided specific grounds for dismissal of the misdemeanor charge.

## I.  Facts and Proceedings

The parties agree on the material facts of this case.  Ronald Taft Davis, III ("Davis") was arrested on November 16, 2008, following a fatal shooting outside a restaurant in Surry County in which the shooter fired ten or more gunshots into an occupied parked car, killing Keonta Fountain.  Davis was charged with first-degree murder, maliciously shooting into an occupied vehicle, and use of a firearm in the commission of a felony.  He was also charged with a misdemeanor offense of reckless handling of a firearm under Code § 18.2-56.1.

On December 16, 2008, Davis appeared in the General District Court of Surry County ("district court") for a trial on the misdemeanor charge and a preliminary hearing on the felonies.  Several witness testified at the hearing, and a court reporter was present to transcribe the proceedings.  A deputy sheriff testified that he responded to the Colonial Farmhouse Restaurant and Tavern shortly after 2 a.m. and found the victim lying face down in a parked car with gunshot wounds to the head.  Joanna Butler ("Butler"), a friend of the victim, testified that she

observed a verbal dispute between several people outside of the restaurant. Butler said that as she and the victim turned to get into a car, she heard shots, ducked down, and could not see who was shooting.

Another restaurant patron, Tim Johnson ("Johnson"), testified that he heard gunshots and saw someone wearing a black shirt and holding a gun approximately fifteen to twenty feet away from the vehicle. When asked specifically whether Johnson could identify Davis as the shooter, Johnson responded that he could not.

> Q: Did you see Ron Davis?
>
> A: No.
>
> Q: Did you see who started the shooting?
>
> A: No.
>
> . . . .
> Q: Look over there. Do you know Ron Davis?
>
> A: Yeah, I know him.
>
> Q: You can't say that it was him, but it was someone dressed in black; is that correct?
>
> A: I can't say. I don't know if it was him or not.

Juan Giles ("Giles"), who was riding with Davis after the shooting, testified that Davis spoke about having "got[ten] rid of a gun," but Giles did not know what gun Davis was referencing. On direct examination, Giles disavowed a prior statement to police in which he had implicated Davis, saying that police threatened him into making his earlier statement. Giles also testified that Davis wore a shirt which was primarily white, red, and green, with a black background.

At the conclusion of the hearing, Davis' attorney asked the district court to acquit Davis on the misdemeanor charge and to dismiss the felony charges for lack of probable cause. After

considering the evidence, the district court dismissed the misdemeanor reckless handling of a firearm charge and refused to certify Davis' felony charges to the circuit court for lack of probable cause. The district court judge made three specific findings:

> On the issue of probable cause, clearly the Commonwealth has met its burden as to whether a felony was committed or not.
>
> On the issue of whether or not you've shown it reasonable to believe Mr. Davis was the one that fired the weapon, I find that you have not met that burden, and I find no probable cause.
>
> On the misdemeanor charge as to whether or not you've proven the case beyond a reasonable doubt, I would find that you have not. I'm going to find him not guilty of that charge.

The district court judge then signed and placed a checkmark in the printed square on the reverse side of the warrant designated "not guilty."

The Commonwealth subsequently brought the case before a grand jury and obtained direct indictments charging Davis with first-degree murder and attempted first-degree murder. Before trial, Davis moved to dismiss the indictments on collateral estoppel grounds because of his acquittal on the misdemeanor charge. In his motion, Davis argued that if the facts were insufficient for the general district court to convict him of recklessly handling "any firearm so as to endanger the life, limb, or property of any person," then "[c]learly the evidence was insufficient to establish" that he was the shooter. The circuit court denied Davis' motion and the case proceeded to a jury trial.

After a two-day trial, the jury convicted Davis of first-degree murder and attempted first-degree murder. The circuit court sentenced Davis to 60 years' imprisonment. Davis then appealed his felony convictions to the Court of Appeals, arguing that the circuit court erred in denying his pre-trial motion to dismiss on collateral estoppel grounds.

3

A divided three-judge panel of the Court of Appeals reversed Davis' convictions and dismissed the indictments.  Davis v. Commonwealth, 63 Va. App. 45, 754 S.E.2d 533 (2014). The panel held that the Commonwealth was collaterally estopped from prosecuting Davis for murder or attempted murder.  Because the district court acquitted Davis of reckless handling of a firearm, the panel held that Davis could not be subsequently tried on the murder charges.  Id. at 51, 754 S.E.2d at 536.  The panel concluded that

> the judge's factual finding, when read in the context of the evidence presented by the Commonwealth and the argument of counsel, simply does not support a conclusion that the misdemeanor acquittal was based on any element of any of the offenses under consideration other than the identity of the criminal agent.
> . . . .
> Since the district court judge, in acquitting Davis of the misdemeanor, held that the Commonwealth had failed to establish that Davis was the gunman, the Commonwealth was precluded from relitigating that fact in the prosecution of the crimes of murder and attempted murder arising out of the same event.

Id. at 55-56, 754 S.E.2d at 539.[*]  The dissent characterized the misdemeanor acquittal as a general verdict and thus insufficient to trigger collateral estoppel.  Id. at 61, 754 S.E.2d at 541.

The Court of Appeals, sitting en banc, affirmed the panel decision, see Davis v. Commonwealth, 64 Va. App. 70, 764 S.E.2d 724 (2014), with three judges dissenting.  We granted the Commonwealth's appeal to this Court on the following assignment of error:

> The Court of Appeals erred in holding that collateral estoppel barred prosecution of the defendant for murder and attempted murder after the defendant's acquittal in the general district court of reckless handling of a firearm.

---

[*] The Court of Appeals remanded the case to the circuit court "for the sole purpose of amending [the circuit court's] records to show the correct offense description."  63 Va. App. at 57, 754 S.E.2d at 540.

## II.  Analysis

### A.  Standard of Review

"In criminal cases, collateral estoppel is a legal doctrine grounded in the Fifth Amendment guarantee against double jeopardy."  Rhodes v. Commonwealth, 223 Va. 743, 747, 292 S.E.2d 373, 375 (1982).  "Because collateral estoppel involves mixed questions of law and fact, not pure questions of law, we apply a de novo standard of review as to . . . whether collateral estoppel is applicable but we are bound by the underlying factual issues as determined by the fact finder unless they are plainly wrong or unsupported by the evidence."  Loudoun Hosp. Center v. Stroube, 50 Va. App. 478, 493, 650 S.E.2d 879, 886-87 (2007).  See also Caplan v. Bogard, 264 Va. 219, 225, 563 S.E.2d 719, 722 (2002) ("We give deference to the trial court's factual findings and view the facts in the light most favorable to . . . the prevailing parties below.").  When a defendant seeks to invoke collateral estoppel, he or she bears the "burden of proving that the precise issue or question he seeks to preclude was raised and determined in the first action."  Clodfelter v. Commonwealth, 218 Va. 98, 106, 235 S.E.2d 340, 345 (1977).

### B.  Collateral Estoppel

In a criminal context, collateral estoppel is the doctrine of issue preclusion based upon the Fifth Amendment's protection against double jeopardy, which has been recognized as a constitutional guarantee applicable to state prosecutions.  Ashe v. Swenson, 397 U.S. 436, 445-46 (1970).  In Ashe, a criminal defendant was charged with six counts of armed robbery for robbing six men at a card game.  Id. at 438.  The charges were tried separately.  Id.  At trial for the first charge, "[t]he proof that an armed robbery had occurred . . . was unassailable," as four of the victims testified to substantially the same series of events.  Id.  However, "the State's evidence that [Ashe] had been one of the robbers was weak."  Id.  Consequently the jury

5

acquitted Ashe of the first charge in a verdict that expressly stated that he was "not guilty due to insufficient evidence." Id. at 439. The state proceeded to try Ashe on one of the other charges at a subsequent trial, over Ashe's objection. Id. At the second trial, the witnesses' testimony as to Ashe's identity was much stronger, Ashe was convicted, and the court sentenced him to 35 years' imprisonment. Id. at 440. Ashe sought federal habeas corpus relief and appealed the denial of his petition for a writ of habeas corpus to the Supreme Court of the United States. Id.

The Supreme Court granted habeas relief on the grounds that criminal collateral estoppel applied. The Supreme Court stated:

> "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

Id. at 443. The Court held that "this established rule of federal law is embodied in the Fifth Amendment guarantee against double jeopardy." Id. at 443-45 (citing United States v. Oppenheimer, 242 U.S. 85 (1916)). In order to determine which specific issues are barred from relitigation in the usual instance of a "general verdict," the reviewing court must "examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Id. at 444. In Ashe's case, "[t]he single rationally conceivable issue in dispute before the jury was whether [Ashe] had been one of the robbers. And the jury by its verdict found that he had not. The federal rule of law, therefore, [made] a second prosecution for the robbery of [the second man] impermissible." Id. at 445.

Nine years after Ashe, we addressed the issue of collateral estoppel in the criminal context in Lee v. Commonwealth, 219 Va. 1108, 254 S.E.2d 126 (1979), on facts very similar to those at issue here. In Lee, as in this case, the defendant was charged with multiple felonies and a related misdemeanor: felony manslaughter, felony hit and run, and misdemeanor driving on a revoked license, all alleged to have occurred on the same day. Id. at 1109-10, 254 S.E.2d at 126-27. In Lee, as in this case, the preliminary hearings on the felonies and the trial on the misdemeanor occurred in one proceeding in the general district court, and the defendant was acquitted of the misdemeanor charge because the evidence was insufficient. Id. at 1110-11, 254 S.E.2d at 127. And in Lee, as in this case, there was evidence in the record of the reason the district court judge dismissed the misdemeanor charge. Id. In Lee, we reversed the felony convictions because of the "express language of the stipulation [of proceedings in the district court]," in which "the district court decided that the evidence was insufficient to prove that [the] defendant was driving his car on the date charged in the warrant," which was both "'an issue of ultimate fact' in the misdemeanor prosecution and an element of each of the felonies charged in the indictments." Id. at 1111, 254 S.E.2d at 127. On the record this was the "only rational conclusion" as to the grounds for the dismissal of the misdemeanor charge. Id. Consequently, we held "that the Commonwealth was estopped to prosecute the felonies." Id.

Since Lee, we have continued to apply criminal collateral estoppel in numerous contexts. In Simon v. Commonwealth, 220 Va. 412, 258 S.E.2d 567 (1979), the defendant was charged with driving under the influence and involuntary manslaughter. Id. at 413-14, 258 S.E.2d at 568-69. He initially refused consent to have his blood drawn. Id. Blood was later drawn after he consented orally but without having been taken before a magistrate as required by statute. Id. He was tried in the district court on the charge of driving under the influence, successfully

7

suppressed the blood-sample intoxication evidence, and was acquitted of the misdemeanor charge.  Id.  At his trial in the circuit court for the felony manslaughter charge, the blood-sample intoxication evidence was admitted over the defendant's objection, and he was convicted.  Id.  We reversed the conviction and held that in subsequent prosecutions, criminal collateral estoppel bars the Commonwealth "from introducing evidence in order to relitigate an issue already resolved in a defendant's favor"—in Simon's case, the fact of his intoxication.  Id. at 417, 258 S.E.2d at 571.

Our holding in Lee compels our decision here.  As the Court of Appeals noted, "the misdemeanor charge was part and parcel of the same incident as the murder and attempted murder."  Davis, 63 Va. App. at 54 n.11, 754 S.E.2d at 538 n.11.  All three charges stemmed from the same alleged course of criminal conduct.  All three charges required proof of the same issue of ultimate fact: that Ronald Davis fired a weapon at a vehicle in the parking lot outside the Colonial Farmhouse Restaurant on the night of November 16, 2008.  The district court's finding that the evidence was insufficient to prove the identity of the shooter was a determination of that fact that was applicable to all three charges.  Upon the entry of a final judgment of acquittal on the misdemeanor, the Commonwealth was precluded from trying Davis on any other charge which required proof of that specific fact as an element of the crime.  When the Commonwealth obtained felony convictions that relied on that specific fact, it put Davis twice in jeopardy for the same offense and violated his rights under the Fifth Amendment.

It is important to clarify that our decision is based on the final judgment of acquittal and not on the district court's refusal to certify the felony charges.  Collateral estoppel only applies when "the issue was actually and necessarily decided in the defendant's favor" in the prior criminal proceeding.  Schiro v. Farley, 510 U.S. 222, 236 (1994); see also Rhodes, 223 Va. at

8

749, 292 S.E.2d at 376. Virginia law is abundantly clear that "a mere dismissal of a felony warrant at a preliminary hearing . . . cannot operate as an acquittal, or finding of not guilty." Moore v. Commonwealth, 218 Va. 388, 393, 237 S.E.2d 187, 191 (1977). The preclusion in this case was triggered by the misdemeanor acquittal. The specific reasons for that acquittal are abundantly clear in the record: the Commonwealth failed to prove that Davis was the shooter. Davis has proven that his subsequent felony convictions were premised on the same issue of ultimate fact that was actually and necessarily decided in his favor in the misdemeanor trial.

Our decision today is premised upon the record of the proceedings below. As we observed in Lee, "district courts frequently mark misdemeanor warrants 'dismissed' without assigning specific grounds." 219 Va. at 1111, 254 S.E.2d at 128. "When grounds for a dismissal are not assigned and do not otherwise appear of record, the doctrine of collateral estoppel will not be applied." Id. However, even when a charge is dismissed on a general verdict of acquittal, we "examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter," to determine the precise fact on which the acquittal stood. Ashe, 397 U.S. at 444 (emphasis added). The district court judge's statements in the present record are precisely the kind of relevant matter we are required to consider under Ashe. So too are the arguments of counsel. Both the Commonwealth's attorney and Davis' counsel focused their arguments on the identity of the shooter. Considered in context, the record demonstrates that Davis' misdemeanor acquittal and subsequent felony convictions were based on the same issue of ultimate fact—a result barred by the prohibition of double jeopardy.

## III. Conclusion

For the reasons stated, we will affirm the judgment of the Court of Appeals reversing the judgments of conviction and dismissing the felony indictments. The case will be remanded to the

Court of Appeals with directions to remand to the Circuit Court of Surry County for the limited purpose identified in the Court of Appeals' opinion.

Affirmed and remanded.

JUSTICE McCLANAHAN, dissenting.

I dissent for the reasons stated in the dissenting opinion of the panel decision of the Court of Appeals, Davis v. Commonwealth, 63 Va. App. 45, 754 S.E.2d 533 (2014) (Beales, J., dissenting). Accordingly, I would reverse the judgment of the Court of Appeals and affirm the circuit court's judgment of convictions.