COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Decker and AtLee
Argued at Richmond, Virginia

UNPUBLISHED

KEITH JEROME ANDERSON

v.        Record No. 2305-14-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
APRIL 12, 2016

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Richard D. Taylor, Jr., Judge

John B. Mann (John B. Mann, P.C., on briefs), for appellant.

Susan Baumgartner, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


The Circuit Court for the City of Richmond ("the circuit court") found Keith Jerome

Anderson ("Anderson") in violation of the terms of a previously suspended sentence for robbery,

and revoked the balance of Anderson's suspended time.  Anderson alleges that the circuit court

erred when it:  (1) admitted hearsay testimony from law enforcement witnesses in violation of

Anderson's Sixth Amendment right to confrontation; (2) revoked Anderson's suspended

sentence as a result of behavior for which Anderson was never convicted; and (3) found the

evidence sufficient to justify revocation.  For the reasons that follow, we affirm.

I. BACKGROUND

In 2011, pursuant to a plea agreement, the circuit court convicted Anderson of robbery,

and sentenced him to ten years in prison, with all ten years suspended.  On September 13, 2012,

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Anderson was charged with robbery and related crimes allegedly[1] committed against Gregory Pierce, as well as separate charges of robbery and related crimes allegedly committed against Sherrod Blackwell. All of these new crimes were alleged to have been committed on the same date, within minutes and blocks of each other. When Pierce failed to appear at a suppression hearing, the charges in which he was the victim were dismissed at the Commonwealth's request, by order of *nolle prosequi*.[2] (The Commonwealth has never reinstituted such charges.) The charges in which Blackwell was the victim were tried over the course of seven months, in three separate jury trials. In November of 2013, the first jury convicted Anderson of robbery, but a mistrial was declared after one of the jurors said that he had been "pressured." In February of 2014, a second jury acquitted Anderson of robbery, abduction, and use of a firearm in the commission of a felony. Finally, in June of 2014, a third jury acquitted Anderson of possession of a firearm by a convicted felon. In summary, after three trials, Anderson was acquitted of all charges in which Blackwell was the victim.

Between the second and third trials, the Commonwealth moved for a rule to show cause why the circuit court should not revoke the suspension of the sentence in Anderson's 2011 robbery conviction. In support of its motion, the Commonwealth alleged that Anderson had been charged "with Robbery and Use of [a] Firearm in the commission of a Felony. Indictments for

---

[1] We use the word "alleged" throughout this opinion when discussing the facts that gave rise to Anderson's revocation, in recognition of the fact that, while Anderson's suspended sentence was revoked as a result of the behavior described here, he was never convicted of the substantive crimes themselves.

[2] According to the detective who spoke with him, Pierce's "intent was never to call the police. His mother got concerned and she called the police."

Attempted Murder,[3] Abduction, Robbery, the Use of a Firearm in the commission of those felonies, and Firearm/Felon followed."

At the revocation hearing on October 31, 2014, two Richmond City Police Department Detectives, Jorge Thondique and Eric Sandlin, testified for the Commonwealth. Their testimony concerned the incident involving Pierce as well as the one involving Blackwell.

Detective Thondique, testifying about his investigation of the alleged robbery of Pierce, stated that on September 13, 2012, he responded to a report of a robbery. The alleged victim, Pierce, recounted the following to Detective Thondique: as he got off the bus, a man asked for a cigarette and a match. The man then displayed a gun, forced Pierce to the ground, took $19 from him, and fled. Pierce described the suspect as wearing a white or gray shirt, white shorts, and white sneakers. He also stated that the suspect wore his hair in cornrows, had a goatee, and sported gold "fronts."[4] While Detective Thondique was speaking to Pierce, another detective had taken Anderson into custody nearby. Ultimately, Detective Thondique conducted a photographic lineup using several photographs, one of which was of Anderson. After viewing the photographic lineup, Pierce identified Anderson as his robber, quantifying his certainty at 80%. Anderson was charged with the robbery of Pierce.

Detective Sandlin, testifying about his investigation of the alleged robbery of Blackwell, stated that on September 13, 2012, he responded to a report of a robbery. (This robbery allegedly occurred "may be [sic] 300, 400 yards" from the robbery investigated by Detective Thondique.) The alleged victim, Blackwell, recounted the following to Detective Sandlin: as he

---

[3] The record is unclear as to when or if the attempted murder charge was ever tried. No trial orders were included in the record. Our recitation of the charges, and the results of the trials on those charges, is based solely on the transcripts of the later revocation proceedings.

[4] Fronts, also known as grills, are removable mouthpieces worn not out of dental necessity but as fashion statements.

was walking his dog, someone approached him and asked about the dog. Suddenly, the man stood up, pointed a gun at Blackwell, and demanded money. Blackwell, who had no cash, gave the man a Wal-Mart credit card instead. The man forced Blackwell to the ground and patted him down. The man demanded that Blackwell "call the card [sic] to find out how much money was on the car[d]." The man then took Blackwell approximately 100 feet to a black Volvo vehicle and unlocked the trunk to that vehicle. At that point, Blackwell pointed his own gun at his would-be robber. Blackwell pulled the trigger, but the gun misfired. He ejected the unspent round, and as the suspect ran away, both Blackwell and the man fired their guns at each other. Blackwell described the robber as a black male, with a goatee, cornrows, a white shirt, white pants, and white shoes.

At the scene, Detective Sandlin located a black Volvo vehicle, and underneath such vehicle, he found an unspent round of ammunition. He also found a spent shell casing, of a different caliber, approximately 15 feet from the Volvo, in the direction the suspect had fled, according to Blackwell. By this time, Anderson had been taken into custody nearby. Detective Sandlin drove Blackwell to Anderson's location for purposes of conducting a "showup."[5] Blackwell viewed Anderson from relatively nearby, in bright lighting, and identified Anderson as the man who had robbed him.

When he was arrested, Anderson was in possession of a set of gold fronts and "a lot of money." He was wearing a white polo shirt with gold stripes, white shorts, and white shoes, and had his hair in cornrows. Anderson had neither a gun nor a Wal-Mart credit card when arrested. (The credit card was found the next day, near the area where the suspect had been running.

---

[5] A showup is a pretrial identification procedure similar to a lineup, except that "unlike a lineup, a showup is a one-on-one confrontation." Showup, Black's Law Dictionary (7th ed. 1999).

Police were unable to identify any fingerprints on the card.)  He also had a car key, and Detective Sandlin used that key to unlock the black Volvo previously described by Blackwell (beneath which an unspent shell casing had been located).

During the course of the revocation proceeding, Anderson raised various objections.  At an earlier hearing, prior to the revocation hearing itself, Anderson's attorney had stated:  "[T]his is basically just a res judicata issue and collateral estoppel, because charges itself is [sic] not sufficient . . . .  It only says he received new charges.  Then when he is subsequently found not guilty of those charges, I think that should have resolved this show cause."

During Detective Thondique's testimony, as he began to recount the words spoken to him by Pierce, Anderson's attorney stated:  "Objection, Judge.  Hearsay."  After the judge overruled this objection, Anderson's attorney continued:  "Judge, I would submit, Your Honor, again, that not only is it hearsay, but of [sic] the best evidence rule, we don't have the person here to testify about what happened."  Similarly, during Detective Sandlin's testimony, as he began to recount the words spoken to him by Blackwell, Anderson's attorney stated:  "I object to hearsay.  They haven't shown Mr. Blackwell is unavailable to come here and testify."  The judge overruled this objection as well.

Finally, after the Commonwealth rested, Anderson moved to strike, arguing:

> Mr. Pierce never testified.  We have no way to test his testimony as
> to the truth and voracity [sic] of what he says happen [sic].  As far
> as Mr. Blackwell, Your Honor, I submit that his testimony at trial
> and [sic] the jury recognized it had enough holes that you could fit
> a dump truck through . . . .  The jury didn't believe him.

He argued that it was wrong for the judge "to basically re-litigate these two situations and say it's – ['][I have the discretion under 19.2-306['] when you have no other conduct, other than what happened in those two cases . . . ."  The judge denied the motion to strike.  Anderson recalled

Detective Sandlin briefly, then rested.  Anderson also moved to admit transcripts of the prior

criminal trials involving the facts upon which his revocation was based.[6]

In his closing argument, Anderson stated:  "[T]he evidence in this case relies on two

individuals, Mr. Blackwell and Mr. Pierce and what they may have told the detectives.  The

detectives have nothing to corroborate the statements of Mr. Pierce that he was robbed."  The

circuit court found Anderson in violation of the previously suspended sentence, and revoked

eight years and nine months, the balance of his time.[7]

---

[6] The Commonwealth and Anderson have debated whether the transcripts of Anderson's prior trials were admitted into evidence at Anderson's revocation proceeding, and if so, the effect of their admission.  At oral argument, the Commonwealth asserted that "the Defendant himself admitted all the transcripts."  See Oral Argument Audio at 16:24 to 16:26 (Jan. 20, 2016).  The Commonwealth repeated this assertion in a subsequent letter to the panel.  See Commonwealth's Letter to Panel (Jan. 26, 2016) ("Anderson waived his objection by introducing the transcripts of the Blackwell trials into evidence.").  In contrast, Anderson claims that the record does not show that the trial court admitted "any transcripts."  See Anderson's Letter to Panel (Feb. 1, 2016).  Both parties are mistaken.  For the sake of clarifying precisely what evidence was before the trial court at the revocation hearing, we shall untie this knot.

The "Show Cause Revocation Order" contained in the joint appendix, signed by Judge Richard D. Taylor, Jr., leaves no doubt about the circuit court's ruling:  "The Court granted the defendant's motion to introduce prior transcripts."

This portion of the revocation order makes clear that *something* was admitted, but does not specify exactly what that was.  Although Anderson apparently moved to introduce multiple prior transcripts ("the transcripts") and the revocation order states that the circuit court granted the motion "to introduce prior transcripts," only one trial transcript is present in the record on appeal:  the transcript from Anderson's trial on February 24th and 25th of 2014.  We are unable to consider the transcripts of the trials of November of 2013 and June of 2014 because of their absence from the joint appendix and the record. (For the same reason, we must assume that the circuit court did not consider them, notwithstanding its use of the plural "transcripts" in its show cause revocation order.)

Given the admission into evidence of the transcript of Anderson's February trial, we presume the trial court considered it.  Although such transcript is not contained within the joint appendix, it is within the record on appeal, and this Court may, and in this instance does, consider it.  See Rule 5A:25(h) ("It will be assumed that the appendix contains everything germane to the assignments of error.  The Court of Appeals may, however, consider other parts of the record.").

[7] Anderson had already served the other one year and three months as a result of two earlier revocations.

II. ANALYSIS

A. Sixth Amendment, Fourteenth Amendment, and Hearsay

This assignment of error reads: "The Circuit Court Erred In Admitting Hearsay Testimony From Detectives Thorndique [sic] And Sandlin Which Was A Violation Of Appellant's Right To Confrontation Under The Sixth Amendment." A trial court's decision to admit or exclude evidence, including hearsay, is reviewed for abuse of discretion. See, e.g., Swain v. Commonwealth, 28 Va. App. 555, 558-59, 507 S.E.2d 116, 117-18 (1998). By contrast, we review constitutional claims *de novo*. Cox v. Commonwealth, 65 Va. App. 506, 513, 779 S.E.2d 199, 202 (2015); see also Blunt v. Commonwealth, 62 Va. App. 1, 8, 741 S.E.2d 56, 59 (2013) (claimed violation of the Fourteenth Amendment resulting from admission of evidence triggers *de novo* review); Hicks v. Commonwealth, 60 Va. App. 237, 250, 725 S.E.2d 748, 755 (2012) (claimed violation of the Confrontation Clause of the Sixth Amendment triggers *de novo* review). These standards of review are unnecessary to the resolution of this assignment of error, however, because Anderson failed to preserve his Sixth Amendment and Fourteenth Amendment claims, and waived his hearsay objection.

Rule 5A:18 states, in part: "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Anderson never mentioned the Sixth Amendment at trial; its first appearance is in this assignment of error. He references the Fourteenth Amendment only in his brief, having failed to mention it in either the circuit court or his assignment of error. As such, Anderson has defaulted these two bases of support for his appeal. Finally, we find that Anderson waived his hearsay objection as a result of his own introduction into evidence of a transcript containing hearsay.

- 7 -

### 1. Sixth Amendment

The Confrontation Clause of the Sixth Amendment is that portion of the Amendment providing that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In the trial court, Anderson made only a hearsay objection. A hearsay objection is not the same as a Sixth Amendment objection. See Muhammad v. Commonwealth, 269 Va. 451, 524, 619 S.E.2d 16, 58 (2005) (finding an assignment of error grounded in the Sixth Amendment waived when only a hearsay objection was made at trial). Anderson's failure to object in the trial court specifically to the violation of his Sixth Amendment rights means he has waived the challenge on appeal.

His invocation of the Sixth Amendment on brief also violates Rule 5A:12(c)(1)(ii), which states, in part: "An assignment of error which does not address the findings or rulings in the trial court . . . is not sufficient." See also Commonwealth v. Herring, 288 Va. 59, 69, 758 S.E.2d 225, 230 (2014) ("The plain language of Rule 5A:12(c)(1)(ii) makes clear that its terms govern the sufficiency of all assignments of error in the Court of Appeals.").

Even if Anderson had adequately preserved his Sixth Amendment claim, that claim, standing alone, would fail due to the inapplicability of the Sixth Amendment in revocation cases. See Cox, 65 Va. App. at 518, 779 S.E.2d at 204 (noting that "the full Sixth Amendment right to confrontation does not apply outside of a criminal trial"); Davis v. Commonwealth, 12 Va. App. 81, 84, 402 S.E.2d 684, 686 (1991) (observing that "revocation hearings are not a stage of criminal prosecution").

### 2. Fourteenth Amendment

After failing to invoke the Fourteenth Amendment in both the circuit court and his assignment of error, Anderson makes this argument in his brief: "The admission of the hearsay testimony of Detectives Thorndyke [sic] and Sandlin was hearsay and was also a violation [sic]

defendant's Constitutional rights under the Sixth Amendment confrontation clause *and more precisely the due process clause of the Fourteenth Amendment*."  (Emphasis added).  This is an impermissible expansion of his assigned error, and for that reason, we cannot consider it.  The time for arguments to be made "more precisely" is in the trial court, not on appeal.  Permitting an appellant to grab whatever constitutional handhold is most expedient as a case progresses through the appellate process undermines the purposes of Rule 5A:18.  See Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992) ("The primary function of Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials."); Gardner v. Commonwealth, 3 Va. App. 418, 423, 350 S.E.2d 229, 232 (1986) (observing that Rule 5A:18 "places the parties on notice that they must give the trial court the first opportunity to rule on disputed evidentiary and procedural questions").

This Court has made clear on many occasions that inclusion of an issue in an assignment of error is a prerequisite to consideration of that issue on appeal.  See Rule 5A:12(c)(1)(i) ("Only assignments of error assigned in the petition for appeal will be noticed by this Court."); see also McLean v. Commonwealth, 30 Va. App. 322, 329, 516 S.E.2d 717, 720 (1999) (*en banc*) ("Only those arguments presented in the petition for appeal and granted by this Court will be considered on appeal."); Cruz v. Commonwealth, 12 Va. App. 661, 664 n.1, 406 S.E.2d 406, 407 n.1 (1991) ("We do not consider this argument, however, since it was not raised in the petition for appeal and no appeal was granted by this Court on that issue.").

It is true that in Commonwealth v. Henderson, 285 Va. 318, 736 S.E.2d 901 (2013), the Supreme Court noted that a trial court "should state for the record the specific grounds upon which the court has relied for 'not allowing confrontation' in order to facilitate effective appellate review of that decision."  Id. at 326-27, 736 S.E.2d at 906 (footnote omitted).  And in

Cox, a panel of this Court reversed a revocation because the trial court admitted hearsay without stating a finding on the record of good cause for admitting testimonial hearsay over Cox's objection.

Both Henderson and Cox are distinguishable from this case. While both of those cases make clear that hearsay is admissible in revocation proceedings only under specific conditions, both involved a hearsay objection accompanied by a due process objection. In Anderson's case, however, confrontation and due process were not raised in the trial court, or even in his assignment of error. Rather, in the circuit court, Anderson repeatedly objected solely on hearsay grounds. The existence of a right does not justify a failure to object in a timely and specific manner to an alleged violation of that right. In Anderson's case, his objection on hearsay grounds failed to preserve related, but distinct, concepts contained in the Fourteenth Amendment. By failing to couple his hearsay objection with a due process objection, Anderson waived his ability to obtain review of his case on Fourteenth Amendment grounds. See also Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*) ("Making one specific argument on an issue does not preserve a separate legal point on the same issue for review.").[8]

### 3. Hearsay

"Generally, '[t]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocation.'" Saunders v. Commonwealth, 62 Va. App. 793, 807-08, 753 S.E.2d 602, 609 (2014) (alteration in original) (quoting Morrissey v. Brewer, 408 U.S. 471, 480 (1972)). See also Gagnon v.

---

[8] Even if we were to find that a hearsay objection standing alone implicitly preserves a due process claim, Anderson's waiver of such hearsay objection (see infra Part II.A.3.) disables that mechanism for obtaining review of his due process claim.

Scarpelli, 411 U.S. 778, 782 (1973) (extending Morrissey's reasoning to probation revocations).[9]

"Hearsay that is testimonial in nature, however, is subject to the limited confrontation right provided by the Fourteenth Amendment." Henderson, 285 Va. at 326, 736 S.E.2d at 905.

The Commonwealth's freedom to use hearsay at revocation proceedings is not unfettered. However, notwithstanding his attempts to distance himself on appeal from his position in the trial court, the record shows that Anderson moved to admit, and the court admitted, the transcript of one of Anderson's trials (which occurred over the course of two days in February of 2014). See supra note 6. This transcript contains approximately thirty-five pages of the testimony of Sherrod Blackwell, during which he described the robbery and the robber:

> I was coming out the back door of my apartment to walk my dog. . . . I saw the defendant and he asked me a question about what kind of dog did I have . . . . So I reach down for the dog, and that is when he actually points the gun directly at my chest. So he starts whining, ["]give me your money, give me your wallet,["] still demanding about money. . . . He is like, ["]well, come on over here. Get on the ground.["] . . . So he is actually rambling [sic] through my pockets on the right and the left . . . . He let me get up, and that is when I gave him my credit card. . . . [He was s]aying he was going to kill me, and I am going to go ahead and walk over here toward the car. . . . He tells me, ["]you are going to get in the trunk.["] So he takes the gun, he still has the gun on me, but then he reaches with the other hand and opens the front door. Now, at this time I am fidgeting with my pants so I can actually pull my gun out, and I am reaching for the handle of the gun, and that is when I actually push him, and we was [sic] roughly like this far apart. I push him back, and I pull my gun out on him. I squeeze, but my gun doesn't have one in the chamber. So he flees. . . . After the first one jammed, I shoot. . . . He shoots back in this area right here, where this grass is. . . . [The police] ask me for a description. I told them male, black race, the age, approximately 34 to 37, height, about five-ten, weight, about 160, hair, cornrows, eyes, brown or black, dark-skin complexion, facial, I got fuzzy goatee. . . . They got a description about his gun, small automatic, shirt, white T-shirt, pants, white pants, shoes, white shoes.

---

[9] Although Anderson's case involves neither a revocation of parole nor of probation, we see no meaningful distinction between those revocations and Anderson's, which is a revocation of a suspended sentence based on a violation of the good behavior requirement.

(Trial Transcript, Feb. 24, 2014, pages 116-129). The prosecutor asked: "Mr. Blackwell, do you have any doubt in your mind that the defendant before the court, Keith Anderson, was the person who robbed you?" Mr. Blackwell responded: "No doubt." (Trial Transcript, Feb. 24, 2014, page 137).

The transcript also contained cross-examination of Mr. Blackwell, during which his testimony was impeached by reference to contradictory testimony from the preliminary hearing. Anderson read portions of the trial transcript into evidence at the revocation hearing, including portions of the testimony of one Ryan O'Sherridan. Anderson's attorney stated:

> I'm looking at Page 151 [of the trial transcript]. This is the testimony of Ryan O'Sherridan. And the question was: ["]Will you tell the jury roughly what time it was, and what you were doing, and what you heard?["] ["]We were watching Monday Night Football. It was the Bears Packers game. I remember I was in the basement. My wife was upstairs. We heard gunshots. We were very close to our home.["] Then he says: ["]I went upstairs and had my wife call 911, and she went downstairs. I kind of looked out the window and grabbed my cell phone, went out outside, and there was a guy in the street. I yelled, [']hey buddy.[']"]

Anderson not only introduced this transcript at the revocation proceeding, he referenced it in his closing argument.

"The rule is that where an accused unsuccessfully objects to evidence which he considers improper and then *on his own behalf introduced evidence of the same character*, he thereby waives his objection, and we cannot reverse for the alleged error." Cox, 65 Va. App. at 516, 779 S.E.2d at 204 (quoting Saunders v. Commonwealth, 211 Va. 399, 401, 177 S.E.2d 637, 638 (1970)). "Use of the waiver rule is . . . limited by the requirement that the subject matter of the evidence at issue be the same as the subject matter of the evidence to which an objection was made." Drinkard-Nuchols v. Andrews, 269 Va. 93, 102, 606 S.E.2d 813, 818 (2005). The testimony of the detectives concerned the robbery itself, as well as descriptions of the robber.

- 12 -

The transcript introduced into evidence by Anderson included testimony about the robbery and a description of the robber. Such transcript also included testimony about a witness whose testimony the detectives did not summarize (O'Sherridan), testimony that Anderson presumably found helpful to his case and that he presumably believed undercut the testimony of Blackwell. Anderson objected to the hearsay testimony of the detectives on the grounds that the witnesses whose statements the detectives were recounting were neither in court, nor shown to be unavailable, but later Anderson introduced a transcript containing similar statements. By offering hearsay evidence of the same character and subject matter as the statements he objected to, Anderson waived any objection to the hearsay introduced by the Commonwealth. See Muhammad, 269 Va. at 525, 619 S.E.2d at 58 (waiver rule applied when defendant offered hearsay in form of letters from his children, which was of the same character as the objected-to hearsay from the Commonwealth, an oral statement by his child, both offered to show the nature of the defendant's relationship with his children).

### 4. Ends of Justice

In neither his opening brief nor his reply brief did Anderson ask us to use the ends of justice exception to the preservation of error requirement found in Rule 5A:18. When pressed about the discrepancy between his assignment of error, which cites the Sixth Amendment, and his brief, which cites the Fourteenth Amendment, Anderson ultimately conceded: "Well that was a mistake. It should have been the Fourteenth Amendment. It's the right of confrontation. It's the same thing . . . ." See Oral Argument Audio at 5:17 to 5:25 (Jan. 20, 2016). He went on, with little argument as to why the Court should comply with his request, to state: "I think the Court, in the interest of justice, ought to decide this issue." See Oral Argument Audio at 5:47 to 5:50 (Jan. 20, 2016).

It is the responsibility of the party seeking dispensation through application of the ends of justice exception to explain exactly why such an exception to the rule of preservation should be made. Rule 5A:18 bars consideration of all unpreserved errors, "even constitutional claims." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). "Application of the ends of justice exception is appropriate when the judgment of the trial court was error and application of the exception is necessary to avoid a grave injustice or the denial of essential rights." Charles v. Commonwealth, 270 Va. 14, 17, 613 S.E.2d 432, 433 (2005). The ends of justice exception should be applied only "sparingly," Michaels v. Commonwealth, 32 Va. App. 601, 608, 529 S.E.2d 822, 826 (2000) (quoting Redman v. Commonwealth, 25 Va. App. 215, 220-21, 487 S.E.2d 269, 272 (1997)), and "requires proof of an error that was 'clear, substantial and material,'" Akers v. Commonwealth, 31 Va. App. 521, 527 n.2, 525 S.E.2d 13, 16 n.2 (2000) (quoting Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989)). Most importantly, invocation of the ends of justice is appropriate only when the record shows "that a miscarriage of justice has occurred, not when it merely shows that a miscarriage *might* have occurred." Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987). Anderson has not shown that a miscarriage of justice has occurred. As such, we find this to be an inappropriate case for employment of the ends of justice exception, and we decline to do so.[10]

## B. Revocation May be Based upon Uncharged Conduct or Conduct Which Resulted in Acquittal

Anderson also assigns error as follows: "The Trial Court Erred In Revoking Keith Anderson's Suspended Sentence . . . Based Upon Charges For Which Keith Anderson Was Found Not Guilty Or Which Were Never Adjudicated." Anderson asks us to review *de novo* the

---

[10] Additionally, Rule 5A:20(e) requires that, "[w]hen the assignment of error was not preserved in the trial court, counsel shall state why the good cause and/or ends of justice exceptions to Rule 5A:18 are applicable." Anderson has not done this, as he only invoked the ends of justice at oral argument.

- 14 -

decision of the trial court relating to this assignment of error. He justifies this request by asserting that he raises a constitutional claim. Although he makes amorphous reference to "basic Constitutional due process rights," in this section of his brief, he does not specify which amendment to the United States Constitution he relies upon for his claim. He does not mention due process in this assignment of error, nor did he do so in the trial court, when he claims to have preserved such error. For the same reason explained earlier in this opinion (see supra Part II.A.2.), we find that Anderson has waived any due process claim as to this assignment of error, having failed to adequately preserve such issue in the trial court or raise it in his assignment of error. Similarly, for the same reason as explained earlier, we decline to apply the ends of justice exception. See supra Part II.A.4.

Although Anderson failed to preserve any constitutional facet of this assignment of error, we still must review the trial court's decision to admit evidence related to past uncharged or acquitted conduct. We conduct such review deferentially, and will reverse only upon a finding that the trial court abused its considerable discretion. See, e.g., Blain v. Commonwealth, 7 Va. App. 10, 15-16, 371 S.E.2d 838, 842 (1988).

In his reply brief, Anderson claims that "where the alleged substantial misconduct mirrors the charges that are the basis for allegations of the violation, the outcome of the charges must preclude the finding of a violation." Anderson's acquittals, he argues, "must moot or negate any allegations of criminal activity and substantial misconduct."[11] This argument runs

---

[11]At oral argument, Anderson made passing reference to the doctrine of collateral estoppel in support of his argument that Anderson's prior acquittals prevented the Commonwealth from proceeding with a revocation. Anderson cited Commonwealth v. Davis, 290 Va. 362, 777 S.E.2d 555 (2015). We find Davis inapplicable to Anderson's case, because the Supreme Court's decision in that case was grounded in the Fifth Amendment's protection against double jeopardy, a legal concept absent from this case.

counter to binding Virginia precedent, and ignores the different burdens of proof applicable to criminal trials and revocation proceedings.[12]

Conviction of a new crime is not required in order to revoke a suspended sentence. See, e.g., Preston v. Commonwealth, 14 Va. App. 731, 734, 419 S.E.2d 288, 290-91 (1992) (reversing a revocation, but agreeing that the Commonwealth need not prove "conviction of a subsequent offense . . . to justify a revocation of suspension due to misconduct"); Slayton v. Commonwealth, 185 Va. 357, 365, 38 S.E.2d 479, 483 (1946) ("There is no requirement, such as is found in some statutes, that the suspension may be revoked only upon the conviction of a subsequent criminal offense.") (decided under Acts 1918, ch. 349, p. 528, as amended by Acts 1938, ch. 122, p. 188, a predecessor to current Code § 19.2-306).

Nor, contrary to Anderson's assertion, is a prior acquittal a bar to revocation. In Slayton, the defendant asserted on appeal "that his acquittal at the hands of the jury of the criminal charge . . . estopped or precluded the circuit court from inquiring into the matter as a ground for determining whether the suspension of sentence should be revoked." Id. at 368, 38 S.E.2d at 484. The Supreme Court rejected this argument, specifically referencing the different burdens of proof at trials and revocation proceedings. Id. at 369, 38 S.E.2d at 485.

The Commonwealth must prove criminal cases beyond a reasonable doubt. See, e.g., In re Winship, 397 U.S. 358, 364 (1970). In contrast, proof beyond a reasonable doubt is not required in revocation proceedings. See, e.g., Commonwealth v. Pannell, 263 Va. 497, 499, 561

---

[12] In Anderson's petition for appeal, he originally assigned four errors. An appeal was granted only as to three of these assignments. The fourth was denied, *per curiam*, by one judge of this Court, and again after review by a three-judge panel. The denied assignment of error read: "The Show Cause Hearing Held in the Circuit Court of the City of Richmond on August 22, 2014 Was a Final Hearing that Resolved All Outstanding Alleged Violations of Good Behavior and Was Res Judicata Regarding All Claims of Misconduct." In his opening brief, Anderson recycles an argument in support of this assignment of error. We do not consider this argument, as it was rejected at the petition stage.

S.E.2d 724, 725 (2002); Slayton, 185 Va. at 366, 38 S.E.2d at 483. The burden in revocation proceedings is supplied by Code § 19.2-306, which notes that a court may revoke the suspension of a sentence "for any cause the court deems sufficient," and later notes that revocation is proper if the court "finds good cause to believe that the defendant has violated the terms of suspension."

Exactly what constitutes the "cause" sufficient to justify revocation is left to a trial court's discretion. In Marshall v. Commonwealth, 202 Va. 217, 220-21, 116 S.E.2d 270, 273-74 (1960) (decided under Code § 53-275, as amended by Acts 1958, ch. 468, p. 600, a predecessor to current Code § 19.2-306), the Supreme Court observed that "the failure of a defendant to be of good behavior, amounting to substantial misconduct, during the period of the suspension would provide reasonable cause for revocation." However, revoking a suspended sentence "should not, under any circumstances, be arbitrary." Griffin v. Cunningham, 205 Va. 349, 354, 136 S.E.2d 840, 844 (1964).

Anderson also tries to fortify his argument with reference to Resio v. Commonwealth, 29 Va. App. 616, 513 S.E.2d 892 (1999), but this support is unsound. At a hearing to revoke Resio's suspended sentence, the Commonwealth's only evidence was three conviction orders. These convictions were subsequently reversed on appeal. In such a situation, where "the Commonwealth's elect[s] to rely solely upon a criminal conviction, *without evidence of the related conduct*, to establish the reasonable cause necessary to revocation, the 'bare fact' of such conviction clearly becomes the basis for the revocation." Id. at 622, 513 S.E.2d at 895 (emphasis added). The danger of reliance upon the bare fact of a conviction is that "the fate of the 'underlying conviction will determine the outcome of [an] appeal of the revocation proceeding.'" Id. (alteration in original) (quoting Patterson v. Commonwealth, 12 Va. App. 1046, 1049, 407 S.E.2d 43, 45 (1991)). In Anderson's case, the trial court did not rely upon a bare conviction (since there was none) but rather upon evidence of misconduct. And "a revocation supported by

- 17 -

evidence of acts which establish that defendant engaged in sufficiently egregious misconduct will survive the failure of any related criminal conviction." Id. at 623 n.2, 513 S.E.2d at 896 n.2.

## C. Sufficiency of the Evidence

Anderson's final assignment of error reads: "The Hearsay Testimony From Detectives Thorndique [sic] and Sandlin At The Revocation Hearing Did Not Demonstrate Substantial Misconduct Which Justified The Revocation of Anderson's Suspended Sentence . . . ." When we review the sufficiency of evidence on appeal, we "will reverse a judgment of the circuit court only upon a showing that it is plainly wrong or without evidence to support it." Singleton v. Commonwealth, 278 Va. 542, 548, 685 S.E.2d 668, 671 (2009). "[W]e review facts in the light most favorable to the Commonwealth, drawing all reasonable inferences in the Commonwealth's favor as the prevailing party at trial." Pruitt v. Commonwealth, 274 Va. 382, 384, 650 S.E.2d 684, 684 (2007).

Much of Anderson's argument in support of this assignment of error repeats his assertions that the evidence was insufficient because Anderson's prior acquittals (of the Blackwell charges) and the prior *nolle prosequi* (of the Pierce charges) rendered any evidence of those alleged crimes unworthy of belief. We have disposed of this argument. See supra Part II.B. We have also disposed of Anderson's argument that the testimony of the detectives was admitted erroneously because it was hearsay and violative of the Sixth and Fourteenth Amendments to the United States Constitution. See supra Part II.A. We are left, therefore, to consider whether the evidence considered by the trial court was sufficient cause to support revocation of the suspended sentence. We find that it was.

At the revocation hearing, the only witnesses who testified were Detectives Thondique and Sandlin. They described two robberies, accomplished using a similar *modus operandi*, committed only minutes and blocks apart. Both victims described a similar suspect, and a

suspect matching their description (Anderson) was apprehended nearby and only shortly after the robberies. Both victims identified Anderson, and he had a key to a vehicle one of the men described. Detective Sandlin located both a spent shell casing and an unspent round near one of the robberies. Anderson points to facts that could support a finding contrary to that made by the trial court. We, however, are looking at the record to determine if any of the facts could support the finding made by the trial court. The Commonwealth was not required to prove beyond a reasonable doubt the facts in support of revocation. Because we find that there is more than adequate support in the record for the trial court's finding, we cannot say that the trial court's decision was "plainly wrong or without evidence to support it." Singleton, 278 Va. at 548, 685 S.E.2d at 671.[13]

## III. CONCLUSION

Anderson failed to preserve his objections under the Sixth or Fourteenth Amendments, pursuant to Rule 5A:18. He waived his hearsay objection by introducing hearsay of the same character himself. Behavior which may not rise to a level sufficient to support a criminal conviction may nevertheless suffice to justify the revocation of a suspended sentence. Finally, reviewing the evidence before the trial court, we cannot say that the trial court's decision to revoke Anderson's suspended sentence was plainly wrong or without evidence to support it. For these reasons, we affirm the revocation of Anderson's suspended sentence.

Affirmed.

---

[13] We also disagree with Anderson's claim on brief that "[t]he Circuit Court's finding of a violation was based solely on the uncorroborated hearsay testimony of Blackwell and Pearce [sic] related to Detectives Thorndique [sic] and Sandlin . . . ." As discussed in note 6, supra, Anderson introduced into evidence the transcript of his trial on February 24th and 25th of 2014. At that trial, Blackwell testified under oath, and was subject to cross-examination. Although the jury weighing the evidence at that trial acquitted Anderson, the trial court at Anderson's revocation hearing reviewed Blackwell's testimony through the lens of a less stringent burden of proof.